# STATE OF MICHIGAN

# COURT OF APPEALS

---

JAMES A SMAIL,

      Plaintiff-Appellee,

v

MERCEDES-BENZ USA, LLC,

      Defendant-Appellant.

<div style="float:right">

UNPUBLISHED
July 24, 2018

No. 337709
Wayne Circuit
LC No. 16-004402-NO

</div>

---

JAMES A SMAIL,

      Plaintiff-Appellant,

v

MERCEDES-BENZ USA, LLC,

      Defendant-Appellee.

<div style="float:right">

No. 338326
Wayne Circuit
LC No. 16-004402-NO

</div>

---

Before: SWARTZLE, P.J., and SHAPIRO and BOONSTRA, JJ.

PER CURIAM.

In Docket No. 338326, plaintiff James Smail appeals by leave granted[1] the trial court's order granting defendant Mercedes-Benz, USA's first motion for summary disposition and dismissing plaintiff's premises-liability claim. In Docket No. 337709, defendant appeals by leave granted[2] the trial court's order denying defendant's second motion for summary disposition, concluding that questions of fact remained that prevented dismissal of plaintiff's claims for contractual and vicarious liability. The appeals in these dockets were consolidated by

---

[1] Smail v Mercedes-Benz, USA, unpublished order of the Court of Appeals, issued July 10, 2017 (Docket No. 338326).

[2] Smail v Mercedes-Benz, USA, unpublished order of the Court of Appeals, issued July 10, 2017 (Docket No. 337709).

administrative order. In Docket No. 338326, we affirm the trial court's order granting defendant's first motion for summary disposition on plaintiff's premises-liability claim. In Docket No. 337709, we reverse the trial court's order denying defendant's second motion for summary disposition and remand for entry of an order granting summary disposition in defendant's favor on plaintiff's contractual- and vicarious-liability claims.

## I. BACKGROUND

Plaintiff is an auto dealer from Pennsylvania. Over the last several decades, plaintiff regularly attended the North American International Auto Show (NAIAS), held in Cobo Hall in the City of Detroit. As relevant to this appeal, the NAIAS has two phases: the press days and the public days. During the press days, auto companies hold press conferences and invite media and industry professionals to view the vehicles and displays before the public. During the public days, the exhibits are open to the public at large.

Defendant entered into a contract with the NAIAS for Cobo Hall floor space at the 2015 show. Defendant agreed to follow the NAIAS exhibition rules and further agreed to be bound by Cobo Hall's rules, including that defendant could not make structural changes without Cobo Hall management's approval. The contract also included an indemnity clause that read:

> Exhibitor [defendant] must protect machinery, equipment and exhibits so that no injury will result to the public, visitors, guests, employees or any person or property. Exhibitor agrees to indemnify, protect and hold harmless Show Management, including its officials, against all claims for damages which may be made as a result of injury, loss or damage arising from the exhibit used by Exhibitor regardless of whether such injury, loss or damage was the result of negligence of Exhibitor, its agents or employees, independent contractors or security personnel acting on behalf of Exhibitor. Such Indemnification shall include but is not limited to all losses and damage as well as all costs and expenses, including attorney fees incurred by Show Management to defend against any claims made against or litigation commenced against it by third parties. Exhibitor shall maintain such insurance as will protect Show Management, the Detroit Regional Convention Facility Authority, and contractors and consultants engaged by them from any claim for damages which may arise from use of Exhibitor's space.

Defendant's parent company, Daimler Auto Group, then contracted with Display International, a German entity, to construct an exhibit for defendant's floorspace. Defendant's representative attended the press days along with another of defendant's employees to oversee defendant's presence at the 2015 NAIAS. In her deposition, defendant's representative testified that two groups of people staffed the exhibit. First, defendant hired a company called Engine Shop that staffed the exhibit with "product specialists." The product specialists were tasked with answering questions about defendant's vehicles and all wore Mercedes-Benz insignia. Second, Display International staffed the exhibit with its own employees. Display International employees were tasked with constructing the exhibit and making any changes or repairs to the exhibit as necessary. Display International employees wore polo shirts that bore either the Mercedes-Benz insignia or the Display International logo.

Plaintiff attended the two press days of the 2015 NAIAS with his two nephews, who are also auto dealers in plaintiff's auto group. Shortly before the show, plaintiff had surgery on his right shoulder to repair a rotator-cuff tear, after which he was required to use a sling designed to keep his arm close to his body. On the morning of the first press day, defendant and his two nephews attended defendant's press conference. During the press conference, the presenter rode an autonomous vehicle onto the stage and, after the press conference, the vehicle was left open for attendees to look inside. Plaintiff saw the car from a distance on the first press day but was unable to view it up close because of the large crowd at the exhibit.

According to defendant's representative, the exhibit was changed between the first and second press days. Defendant's representative testified that, at Daimler Auto Group's instruction, Display International erected a small plexi-glass barricade around the autonomous vehicle. In the various deposition testimonies, estimates of the barrier's height ranged from "12 inches" to "shin level" to "knee high." According to defendant's representative, an auto industry "rule of thumb" for displaying vehicles at auto shows was to erect unobtrusive barriers that would protect the vehicle from attendees while still allowing attendees a full view of the vehicle.

Plaintiff and his nephews returned to the show for the second press day. After visiting other exhibits, the three men were headed out of Cobo Hall when defendant decided to take a detour to get a better view of defendant's autonomous vehicle. Plaintiff was looking at the autonomous vehicle, walked around another attendee, tripped over the plexi-glass barricade, and landed on his right shoulder. Plaintiff admitted in his deposition that, had he been looking down, he possibly could have seen the barrier. According to plaintiff, he felt pain immediately upon landing on his shoulder. Plaintiff testified that two men, whom he believed to be defendant's employees, attempted to help him up and began pulling on his arm that was in a sling. Plaintiff yelled at the men to leave him alone and they obliged. Plaintiff testified that, after he fell, he noticed pieces of the barricade that had been separated or broken by the fall. According to plaintiff, the two men put the barricade back together, his nephews helped him up, and plaintiff and his nephews left the show. When plaintiff returned to Pennsylvania that afternoon, he was seen by his shoulder surgeon, who eventually determined that plaintiff had retorn his right rotator cuff, requiring a second shoulder surgery.

Plaintiff sued defendant seeking compensation for the injuries he incurred in the fall. Plaintiff made three separate claims in an original and then amended complaint. First, plaintiff pleaded a negligence claim, arguing that defendant's erection of the plexi-glass barrier breached the duty of care it owed to plaintiff as a guest at its exhibit. Second, plaintiff pleaded a third-party-beneficiary claim, arguing that defendant breached the portion of its contract with the NAIAS that required it to make its exhibit safe for NAIAS guests. Finally, plaintiff pleaded a vicarious-liability claim, arguing that the two men that helped plaintiff after his fall were defendant's agents or ostensible agents and that defendant was liable for the two men's negligence in pulling on plaintiff's arm, thereby re-injuring plaintiff's shoulder.

Defendant sought dismissal of plaintiff's amended complaint in two separate motions for summary disposition under MCR 2.116(C)(10). In its first motion, defendant argued that it was entitled to summary disposition on plaintiff's negligence claim because plaintiff's claim was for premises-liability and the barrier was an open-and-obvious hazard. Plaintiff responded that his claim was for ordinary negligence, not premises-liability, and that the open-and-obvious doctrine

did not apply. Alternatively, plaintiff argued that the hazard was not open-and-obvious because the hazard was essentially invisible and was not present on the first press day. Plaintiff attached to his response the affidavit of a specialist in "human factors applications," who averred that the barrier was not open and obvious because, in a crowded architecturally constructed environment, plaintiff's focus would be on avoiding other people, rather than looking at his feet. The trial court concluded that plaintiff's claim was for premises-liability and that the plexi-glass barrier was an open-and-obvious hazard. Accordingly, the trial court granted defendant's first motion for summary disposition and dismissed plaintiff's premises-liability claim.

Defendant addressed plaintiff's contractual- and vicarious-liability claims in its second motion for summary disposition. Regarding plaintiff's contractual-liability claim, defendant argued that plaintiff could not be a third-party beneficiary to the contract because the provision at issue applied to the public generally, rather than a designated group. Plaintiff responded that the contract's use of the term "guests" identified a specific group of intended beneficiaries. Plaintiff argued that, because he was an invited guest at the show, he was entitled to enforce the contract as an intended third-party beneficiary. The trial court concluded that a question of material fact existed on whether plaintiff was an intended third-party beneficiary and denied defendant's request to dismiss plaintiff's contractual-liability claim.

Regarding plaintiff's vicarious-liability claim, defendant argued that it was entitled to summary disposition on several grounds. First, defendant argued that the men who helped plaintiff after his fall were not product specialists, though defendant agreed that the two men could have been Display International employees. Defendant contended that no direct agency relationship existed between it and Display International employees. Next, defendant argued that, even assuming that the two men were product specialists, assisting plaintiff after his fall was outside of any agency relationship defendant had with them, which was limited to answering questions about defendant's vehicles. Finally, defendant argued that plaintiff could not show that the two men caused his injuries, noting plaintiff's testimony that he felt pain immediately upon landing on his shoulder. Plaintiff responded that the two men were, at the very least, defendant's ostensible agents because it was reasonable for him to believe that the people who staffed the exhibit were defendant's employees. Plaintiff argued that a question of fact existed on whether the two men created or aggravated the tear in his rotator cuff by pulling on him. The trial court agreed with plaintiff that a question of fact existed on whether the two men caused his injuries and denied defendant's request to dismiss plaintiff's vicarious-liability claims. Accordingly, the trial court denied defendant's second motion for summary disposition in its entirety.

These appeals followed.

## II. ANALYSIS

This Court reviews a grant of summary disposition under MCR 2.116(C)(10) de novo. *Peters v Department of Corrections*, 215 Mich App 485, 486; 546 NW2d 668 (1996). A party is entitled to dismissal of a claim when, "[e]xcept as to the amount of damages, there is no genuine issue concerning any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition under MCR 2.116(C)(10), this Court considers "the pleadings, admissions, and other

-4-

evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008).

A.  Docket No. 338326

In Docket No. 338326, plaintiff challenges the trial court's dismissal of his negligence claim. Plaintiff's challenge is two-fold. Primarily, plaintiff argues that his claim was for ordinary negligence, rather than premises liability, and that the open-and-obvious doctrine therefore did not apply to his claim. Alternatively, plaintiff argues that, even if his claim was for premises liability, the plexi-glass barrier was not an open-and-obvious hazard. We take each argument in turn.

1.  Plaintiff's Claim Was For Premises Liability

"Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land." *Lymon v Freedland*, 314 Mich App 746, 756; 887 NW2d 456 (2016) (internal quotation marks and citation omitted). "It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007). This Court is not bound by the labels the parties attached to their claims. *Jahnke v Allen*, 308 Mich App 472, 475; 865 NW2d 49 (2014).

A plaintiff alleging a premises-liability claim must establish that (1) the defendant owed him a duty, (2) the defendant breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) the plaintiff suffered damages. *Sanders v Perfecting Church*, 303 Mich App 1, 4; 840 NW2d 401 (2013). With respect to a premises-liability claim, "liability arises solely from the defendant's duty as an owner, possessor, or occupier of land." *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 692; 822 NW2d 254 (2012). Both possession of and control over the premises must be present to give rise to a duty of care regarding the premises. *Sholberg v Truman*, 496 Mich 1, 7-8; 852 NW2d 89 (2014). "Possession" is defined as "the right under which one may exercise control over something to the exclusion of all others." *Derbabian v S & C Snowplowing, Inc*, 249 Mich App 695, 703; 644 NW2d 779 (2002) (internal citation, quotation marks, and emphasis omitted). "[P]ossession for purposes of premises liability does not turn on a theoretical or impending right of possession, but instead depends on the actual exercise of dominion and control over the property." *Kubczak v Chemical Bank & Trust Co*, 456 Mich 653, 661; 575 NW2d 745 (1998). In turn, "control" means the power to "manage, direct, or oversee" the property. *Derbabian*, 249 Mich App at 703-704 (internal citation and quotation marks omitted).

*Defendant Was a Premises Possessor*. Both parties argue that defendant did not possess the premises at which plaintiff was injured. Plaintiff argues that Cobo Hall and the NAIAS possessed the premises to defendant's exclusion. Defendant argues that it did not possess the premises because Display International possessed the exhibit to defendant's exclusion. We disagree with both parties.

Possession and control of a single piece of property may be divided among multiple parties. See *Bailey v Schaaf*, 494 Mich 595, 604–606; 835 NW2d 413 (2013). Indeed, this is often the case with multi-tenant rental properties, where each tenant enjoys possession and control over their individual unit to the exclusion of the landlord and the landlord retains possession and control over the common areas. *Id*. at 604-605. Where two or more parties retain some possession and control over the same portion of the premises, the parties have "coextensive duties to protect invitees . . . from physical hazards on the premises." *Id*. at 607.

The record confirms that possession and control of the premises here was split among multiple parties and that defendant was one of the premises possessors. To begin with, the rules promulgated by the NAIAS and Cobo Hall's management evidence an intent to retain control over the permanent structures of Cobo Hall. Indeed, defendant could not structurally alter Cobo Hall without Cobo Hall's management's approval. Subject to these rules, however, defendant enjoyed possession and control over a portion of floor space. Although defendant claims that Display International controlled the exhibit, defendant is the only party to whom the space was leased. By way of that lease, defendant enjoyed the power to erect an exhibit, invite patrons to its exhibit, and manage the exhibit. Defendant granted the right to construct and repair the exhibit on its floor space to Daimler Auto Group, who in turn granted the right to Display International. Even assuming that Display International possessed and controlled the exhibit by way of this grant, it is clear that Display International's possession and control was not to the exclusion of defendant. Defendant performed a press conference at the exhibit, staffed the exhibit with its own employees and third-party product specialists, and invited NAIAS attendees into its space. In doing so, defendant possessed and controlled the exhibit space. Whether this possession and control was exclusive or shared with Display International is immaterial to the claims on appeal.

Therefore, because defendant possessed and controlled the premises on which plaintiff was injured, we need not address the parties' arguments regarding whether a premises-liability claim transforms into an ordinary negligence claim when the defendant is not the premises possessor. To determine whether plaintiff's claim is for premises liability, the only remaining question is whether the injury was allegedly caused by a condition on the land.

*The Injury Was Allegedly Caused By a Condition on the Land*. "Ordinary negligence claims are grounded on the underlying premise that a person has a duty to conform his or her conduct to an applicable standard of care when undertaking an activity." *Lymon*, 314 Mich App at 756. Comparatively, in a premises-liability claim, "liability arises solely from the defendant's duty as an owner, possessor, or occupier of land." *Buhalis*, 296 Mich App at 692. Nevertheless, "that does not preclude a separate claim grounded on an independent theory of liability based on the defendant's conduct." *Laier v Kitchen*, 266 Mich App 482, 493; 702 NW2d 199 (2005). Still, if "the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury." *Buhalis*, 296 Mich App at 692.

Here, plaintiff argues that he was injured when he fell over a small plexi-glass barrier erected on defendant's exhibit. Plaintiff asserts that defendant was negligent in erecting the barrier or causing it to be erected. Plaintiff has therefore alleged that defendant's creation of a

condition on the premises caused his injury. For the purposes of his claims involving the plexi-glass barrier, plaintiff has not alleged any negligent conduct on behalf of defendant or anyone defendant controls, apart from a negligent design or placement of the barrier. Because plaintiff alleges that defendant created a dangerous condition on the premises that caused plaintiff's injury, we conclude that plaintiff's claim sounds exclusively in premises liability.

2.    The Hazard Was Open and Obvious

A possessor of property owes an invitee a duty "to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Buhalis*, 296 Mich App at 693 (internal citation and quotation marks omitted). The possessor is "not an absolute insurer of the safety of an invitee," however, and thus the possessor's "duty does not extend to open and obvious dangers" *Id*. (internal citations and quotation marks omitted). Specifically, the possessor "owes no duty to protect or warn of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard." *Lymon*, 314 Mich App at 757-758 (internal citation and quotation marks omitted). "Whether a danger is open and obvious involves an objective inquiry to determine whether it is reasonable to expect that an average person with ordinary intelligence would have discovered the danger upon casual inspection." *Id*. at 758 (internal citation and notation omitted). When "the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee." *Buhalis*, 296 Mich App at 693 (internal citation and quotation marks omitted). The open-and-obvious doctrine is not an exception to the duty owed by a premises possessor, but is instead an integral part of that duty, and its application is a question of law for the court to decide. *Id*.

Plaintiff claims that the barrier was not an open-and-obvious hazard because it was transparent and short. This Court has concluded that a floor-level hazard is not open and obvious when it is small and, given its location, would not be visible upon the plaintiff's casual inspection. See *Price v Kroger Co of Michigan*, 284 Mich App 496, 502; 773 NW2d 739 (2009). When the floor-level hazard is larger and in an area where it would be expected, however, the floor-level hazard is open and obvious. See *Garret v WS Butterfield Theatres*, 261 Mich 262, 263-264; 246 NW 57 (1933); *Kennedy v Great Atlantic & Pacific Tea Co*, 274 Mich App 710, 717; 737 NW2d 179 (2007). Both parties provided pictures of the barrier to the trial court. In each of these pictures, there is no structural element blocking the barrier that surrounds the vehicle at a distance of a few feet. Indeed, the barrier was clearly visible from the pictures in the record. Moreover, plaintiff acknowledged that he could have seen the barrier if he had been looking down and, after his fall, plaintiff was able to see pieces of the barrier, despite their transparency. Accordingly, we conclude that the barrier was not so inconspicuous that, had plaintiff been looking down, he would have seen the barrier upon casual inspection.

Citing his expert's testimony, plaintiff argues that an ordinary person would not be looking down at the NAIAS, but would rather be looking up at the vehicles and people in the crowd. Whether plaintiff was distracted by people, cars, or anything else at the NAIAS, however, is not the appropriate inquiry. See *Kennedy*, 274 Mich App at 717. Rather, the relevant inquiry is "whether there was anything 'unusual' about the plaintiff's distraction that would preclude application of the open and obvious danger doctrine." *Id*., citing *Lugo v*

*Ameritech Corp, Inc*, 464 Mich 512, 522; 629 NW2d 384 (2001). Crowds and vehicles are to be expected at an auto show as plaintiff no doubt experienced during his many years of attendance at prior shows. There was nothing "unusual" about the distraction posed by these crowds and vehicles that would have precluded application of the open-and-obvious-danger doctrine.

Finally, plaintiff argues that the barrier was not open and obvious because it was erected between the first and second press days. Yet, plaintiff has not pointed to any evidence to suggest that it is unusual for an auto-show display to change from one day to the next. More importantly, the record makes clear that, even though the hazard may have been new, had defendant been looking down, he would have seen the plexi-glass barrier. Accordingly, the trial court did not err in concluding that the barrier was an open-and-obvious danger. Because plaintiff has not argued that any exception to the open-and-obvious-danger doctrine applied, *Lymon*, 314 Mich App at 758, defendant was entitled to summary disposition on plaintiff's premises-liability claim.

B.      Docket No. 337709

In Docket No. 337709, defendant challenges the trial court's denial of its second motion for summary disposition. We agree with defendant that plaintiff is not a third-party beneficiary of defendant's contract with the NAIAS and that plaintiff's vicarious-liability claim fails apart from any question regarding causation. Accordingly, we reverse the trial court's denial of defendant's second motion for summary disposition.

1.      Defendant Was Entitled to Dismissal of Plaintiff's Contractual-Liability Claim

In Michigan, third-party beneficiary claims are statutory in nature. The third-party beneficiary statute, MCL 600.1405, provides, "Any person for whose benefit a promise is made by way of contract . . . has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee." The statute continues, "A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise has undertaken to give or to do or refrain from doing something directly to or for said person." MCL 600.1405(1). "[A] person who qualifies under the third-party-beneficiary statute gains the right to sue to enforce the contract." *Shay v Aldrich*, 487 Mich 648, 666; 790 NW2d 629 (2010).

While seemingly encompassing a wide breadth of beneficiaries, in actuality "the plain language of this statute reflects that not every person incidentally benefitted by a contractual promise has a right to sue for breach of that promise." *Schmalfeldt v North Pointe Ins Co*, 469 Mich 422, 427; 670 NW2d 651 (2003) (internal citation and quotation marks omitted). By using the modifier "directly," the statute makes clear that only expressly intended beneficiaries may enforce the promise as a statutory third-party beneficiary. *Id.*; *Koenig v City of South Haven*, 460 Mich 667, 676-677; 597 NW2d 99 (1999). Thus, the statutory language "indicates the Legislature's intent to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract." *Koenig*, 460 Mich at 677. We look to the objective "form and meaning of the contract itself to determine whether a party is an intended third-party beneficiary." *Id*. (internal quotation marks omitted).

It is common for contracts to refer to classes of people or entities rather than a specific person or entity. A covered "third-party beneficiary may be a member of a class, but the class must be sufficiently described." *Id.* at 680. "[T]his of course means that the class must be something less than the entire universe, e.g., 'the public.' " *Id*. "The rationale would appear to be that a contracting party can only be held to have knowingly undertaken an obligation directly for the benefit of a class of persons if the class is reasonably identified." *Id*. And, "the public as a whole is too expansive a group to be considered 'directly' benefitted by a contractual promise." *Brunsell*, 467 Mich at 298.

Plaintiff contends that the first sentence of the indemnity clause renders him a covered third-party beneficiary. As noted earlier, the sentence reads: "Exhibitor must protect machinery, equipment and exhibits so that no injury will result to the public, visitors, guests, employees or any person or property."

Plaintiff draws the reasonable inference that he was a "guest" of the NAIAS show. Had the indemnity clause included only that category, plaintiff would be on solid footing. Yet, the clause goes on and includes several other terms that give the clause meaning and context. *Bloomfield Estates Improvement Ass'n v City of Birmingham*, 479 Mich 206, 215; 737 NW2d 670 (2007). Specifically, the clause includes the terms "the public" and "any person or property." Both are quintessential terms that encompass the "entire universe" of potential beneficiaries. *Koenig*, 460 Mich at 680. Put simply, there is no person or entity that the clause does not cover. Thus, despite its use of the term "guests," the clause is insufficient to evidence an intent to directly benefit plaintiff as a member of a well-defined group.

Reading the indemnity clause as a whole supports this conclusion. The clause stands within a paragraph in which defendant agreed to hold the NAIAS harmless for "all losses and damage as well as costs and expenses" for "any claims" made by third parties against the NAIAS. As a whole, the indemnity clause confirms the parties' intent that defendant would indemnify the NAIAS against any potential claim caused by defendant or its agents. The purpose of this clause is to allocate liability between defendant and the NAIAS, not to grant any rights to any third parties. See *Paul v Bogle*, 193 Mich App 479, 492; 484 NW2d 728 (1992).

Plaintiff argues that he was not a member of "the public," but rather an invited guest at the exclusive, invitation-only press days. According to plaintiff, the relevant class is therefore not the public, but rather the limited group of invited press-day guests. Plaintiff's argument, however, improperly proceeds backwards from the injury to create a class. See *Koenig*, 460 Mich at 683. The clause at issue makes no distinction between the press days and the public days of the NAIAS. On its face, the contract language applies equally to the press days, the public days, and the remainder of the time the floorspace was in defendant's control. As noted already, the contract must be read in light of its intent to encompass any potential claimant against the NAIAS and, because the NAIAS is an event open to the public at large, the potential class involved is "the public" or "any person or property."

For these reasons, the contract does not "specifically designate" a potential class of intended beneficiaries. Because plaintiff was not an intended third-party beneficiary to the contract, defendant was entitled to summary disposition on plaintiff's contractual-liability claim.

2.    Defendant Was Entitled to Dismissal of Plaintiff's Vicarious-Liability Claims

The doctrine of vicarious liability allocates the risk of an agent's negligent acts to the principal by creating a practical identity between the principal and its agents. *Rogers v JB Hunt Transp, Inc*, 466 Mich 645, 653; 649 NW2d 23 (2002); *Nippa v Botsford Gen Hosp*, 257 Mich App 387, 391; 668 NW2d 628 (2003). "An agency is defined as a fiduciary relationship created by express or implied contract or by law, in which one party (the agent) may act on behalf of another party (the principal) and bind that other party by words or actions." *Logan v Manpower of Lansing, Inc*, 304 Mich App 550, 559; 847 NW2d 679 (2014) (internal citation and quotation marks omitted). "It is a fundamental principle of hornbook agency law that an agency relationship arises only where the principal has the right to control the conduct of the agent with respect to matters entrusted to him." *St. Clair Intermediate School Dist v Intermediate Ed Ass'n/Michigan Ed Ass'n*, 458 Mich 540, 558 n 18; 581 NW2d 707 (1998) (internal citations and notation omitted).

"It is a longstanding legal principle that a duly authorized agent has the power to act and bind the principal to the same extent as if the principal acted." *In re Estate of Capuzzi*, 470 Mich 399, 402; 684 NW2d 677 (2004). Thus, the law imputes the agent's negligent actions to the principal so long as those actions were taken within the boundaries of the principal-agency relationship. *Rogers*, 466 Mich at 650-651; *Nippa*, 257 Mich App at 391. The principal "stands in the shoes of its agents" and "is held to have done what the agent has done." *Nippa*, 257 Mich App at 391. The principal, however, is not vicariously liable for acts committed by the agent outside of the scope of the agency, because in that circumstance the agent is "not acting for the [principal] or under the [principal's] control." *Rogers*, 466 Mich at 651.

*The Identity of the Two Men.*  The record is clear that the two men who tried to help plaintiff after he fell were not the product specialists defendant hired. Defendant's representative testified that all of the product specialists wore Mercedes-Benz insignia, and plaintiff testified that neither man wore a shirt with that insignia. Plaintiff points to no record evidence to question the testimony of defendant's representative on this question.

Plaintiff also testified, however, that the two men who helped him repaired the portions of the plexi-glass barrier that came apart during plaintiff's fall. Given this, the two men's actions were consistent with that of a Display International employee. Although these are also consistent with that of a Good Samaritan, defendant agrees that a question of fact exists on whether the two men were Display International employees.

*Plaintiff's Direct-Agency Claim.*  Even assuming that the two men were Display International employees, we conclude that defendant was entitled to summary disposition on plaintiff's direct-agency claim because there was no agency relationship between defendant and Display International employees.

According to defendant's documentation, Display International was hired by defendant's parent company, Daimler Auto Group, to build the exhibit at the NAIAS. According to defendant's representative, Daimler Auto Group controlled the changing of the exhibit and Display International controlled its employees' conduct at the exhibit. There is nothing in defendant's representative's testimony that indicates that defendant had any right to control

Display International employees. Accordingly, defendant met its initial burden to show that no agency relationship existed between defendant and Display International employees. See *St. Clair*, 458 Mich at 558.

When a motion under MCR 2.116(C)(10) is made and supported by sufficient documentation, "an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or [other documentary evidence], set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4). Thus, the burden shifted to plaintiff to show that there was a material question of fact on whether an agency relationship existed between defendant and the two men who helped plaintiff after his fall. Plaintiff did not present any evidence showing that defendant controlled Display International employees. Instead, plaintiff appears to have assumed that the two men who helped him were product specialists, which, as shown above, is not supported in the record. Accordingly, plaintiff did not meet his burden to show that a material question of fact existed on whether the two men were defendant's direct agents.

*Plaintiff's Ostensible-Agency Claim.* Lastly, plaintiff attempts to show that defendant is liable under an ostensible-agency theory. "An agency is ostensible when the principal intentionally or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." *Grewe v Mt Clemens Gen Hosp*, 404 Mich 240, 252; 273 NW2d 429 (1978) (internal quotation marks and citation omitted). "[A]n ostensible agency arises when circumstances are such as to cause a third party to reasonably rely upon the existence of an agency relationship so as to estop the alleged principal or agent from denying the agency." *Sasseen v Cmty Hosp Found*, 159 Mich App 231, 239; 406 NW2d 193 (1986) (internal citation and notation omitted).

Here, even assuming that plaintiff reasonably believed that Display International employees were defendant's agents, plaintiff has not shown that he relied on the purported agency relationship to his detriment. First, the purported agency relationship did not cause defendant to trip over the barrier. Rather, according to plaintiff, he tripped over the barrier because he did not see it, i.e., the barrier was negligently designed or placed. Second, plaintiff has not shown that the purported agency relationship led him to seek help from the two men. Rather, the record shows that the two men helped plaintiff on their own accord and that plaintiff did not seek or even want their assistance.

For these reasons, defendant was entitled to summary disposition on plaintiff's ostensible-agency vicarious-liability claim. Because defendant was otherwise entitled to summary disposition on plaintiff's vicarious-liability claims, we need not address defendant's arguments that plaintiff cannot show causation or that assisting plaintiff was outside of any agency relationship defendant may have had with the two men.

## III.  CONCLUSION

In Docket No. 338326, we affirm the trial court's order granting defendant's first motion for summary disposition.  In Docket No. 337709, we reverse the trial court's order denying defendant's second motion for summary disposition and remand for entry of an order granting in full defendant's second motion for summary disposition.  We do not retain jurisdiction.


/s/ Brock A. Swartzle
/s/ Mark T. Boonstra