# STATE OF MICHIGAN

# COURT OF APPEALS

KATHY MCGEE and RANDY MCGEE,
Conservators and Guardians for JONATHAN A.
MCGEE,

UNPUBLISHED
December 11, 2018

Plaintiffs-Appellants,

v

No. 341740
Saginaw Circuit Court
LC No. 16-031306-NO

SAGINAW SUPERIOR HOSPITALITY INC.,
doing business as BAYMONT INN & SUITES,

Defendant-Appellee.

Before: BOONSTRA, P.J., and JANSEN and GADOLA, JJ.

PER CURIAM.

In this premises liability action, plaintiffs Kathy and Randy McGee, as conservators and guardians for their son Jonathan A. McGee, appeal as of right the trial court's opinion and order granting defendant's motion for summary disposition under MCR 2.116(C)(8) and (C)(10). We affirm.

## I. FACTS

On November 25, 2015, plaintiffs, their son Jonathan A. McGee, and their daughter Angela McGee arrived in Bridgeport, Michigan, from their home in Tennessee to spend the Thanksgiving holiday with their family. During their visit, the McGees stayed at a hotel owned and operated by defendant. The McGees spent the following day with family, and plaintiffs recall that it rained off and on throughout the entire day. When they returned to the hotel at approximately 7:00 p.m., Randy entered first with the family dog, followed by Jonathan and then Kathy. The hotel's main entrance is located beneath an overhang and consists of one set of automatic sliding doors leading into a vestibule, with a second set of sliding doors leading into the lobby. As Jonathan passed through the first set of sliding doors, he slipped and fell on a puddle of water on the tile floor. Kathy, who was walking just behind Jonathan, testified that she did not observe the puddle until after he fell and that it was approximately one foot in diameter. Likewise, Randy testified that he did not notice any water when he passed through the vestibule ahead of Jonathan, as he was concentrating on walking the dog, but that he saw the puddle after Jonathan fell. Randy testified that the puddle roughly covered one of the floor tiles. Plaintiffs observed no signs cautioning guests of the wet floor.

-1-

Tiffany Ronan, the only hotel employee on duty that evening, testified that, although she did not observe Jonathan's fall, she heard a disturbance near the entrance. When she investigated the cause, she saw Jonathan sitting on a nearby luggage cart with Kathy attending him. Ronan noticed that the tile floor and a large area rug both appeared to be wet. She further testified that a wet floor sign had been placed in view, though she could not recall the exact positioning of the sign. According to plaintiffs' testimony, Ronan told them that when it rains the area rug is supposed to be repositioned to abut against the first set of sliding doors in order to prevent guests from slipping as they enter. During deposition, however, Ronan did not recall making this statement. The hotel's general manager, William Mason, denied that the hotel staff move the area rug but admitted that when the floor becomes wet and slippery, the staff frequently dry it with a mop and place a wet floor sign to caution guests.

Plaintiffs brought the present action alleging premises liability and asserting that, as a result of Jonathan's fall, he sustained a broken femur requiring surgery.[1] Defendant moved for summary judgment under MCR 2.116(C)(8) and (C)(10), arguing (1) that the water presented an open and obvious danger obviating defendant's duty of care with respect to the water and (2) that defendant had no notice of the condition giving rise to liability. The trial court granted defendant's motion, holding that there were no questions of fact that the water presented an open and obvious danger, and that defendant had no notice of the condition. Plaintiffs now appeal.

## II. ANALYSIS

### 1. STANDARD OF REVIEW

This Court reviews a trial court's grant or denial of a motion for summary disposition de novo. *Ormsby v Capital Welding, Inc*, 471 Mich 45, 52; 684 NW2d 320 (2004). Although the trial court did not specify whether it granted defendant's motion pursuant to MCR 2.116(C)(8) or (C)(10), we construe it as having been granted under MCR 2.116(C)(10), as the trial court considered documentary evidence beyond the pleadings. See *Cuddington v United Health Servs, Inc*, 298 Mich 264, 270; 826 NW2d 519 (2012). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint, *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012), and is properly granted if "there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law," *Rose v Nat'l Auction Group, Inc*, 466 Mich 453, 461; 646 NW2d 455 (2002). When reviewing a motion brought under MCR 2.116(C)(10), the court considers the affidavits, depositions, pleadings, admissions, and other documentary evidence submitted by the parties in the light most favorable to the non-moving party. *Id*. Though the moving party bears the initial burden of supporting its motion by such evidence, the party opposing the motion must thereafter go beyond the pleadings and adduce evidence demonstrating that a genuine issue of material fact exists. *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). " 'A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might

---

[1] Jonathan, who was born with Down syndrome, suffered from hip dysplasia before the accident giving rise to the present action.

differ.' " *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 423; 864 NW2d 609 (2014), quoting *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

## 2. OPEN AND OBVIOUS DOCTRINE

As in any negligence action, a plaintiff asserting a claim of premises liability must prove the following four elements: (1) that the defendant owed the plaintiff a duty of care; (2) that the defendant breached that duty; (3) that the defendant's breach was the proximate cause of the plaintiff's injury; and (4) that the plaintiff suffered damages. *Bialick v Megan Mary, Inc*, 286 Mich App 359, 362; 780 NW2d 599 (2009). Generally, the duty owed by a premises possessor to an invitee[2] is "to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001). Under Michigan law, a premises possessor is liable for breach of this duty when it is aware or should be aware of a dangerous condition that is unknown to the invitee and fails to fix, guard against, or warn the invitee of the defect. *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012).

A premises possessor, however, is not an absolute guarantor of an invitee's safety, as those who enter the premises are likewise charged with exercising reasonable judgment when confronting apparent dangers. *Id*. at 459. As such, premises possessors have no duty to protect or warn invitees of dangers that are open and obvious. *Id*. at 460. A danger is open and obvious if "it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Id*. at 461. This examination is an objective one, focused on the condition of the premises rather than on the actions of the invitee. *Lugo*, 464 Mich at 523-624. A narrow exception to the open and obvious doctrine applies when a "special aspect" of the condition renders the risk of harm unreasonable in spite of its obviousness or an invitee's knowledge of it. *Id*. at 516. Such special aspects include open and obvious conditions that are "effectively unavoidable" or that "impose an unreasonably high risk of severe harm." *Id*. at 518. Accordingly, when "special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Id*. at 517.

Even when viewed in the light most favorable to plaintiffs, the evidence in the present case supports the conclusion that the puddle of water was open and obvious. Deposition testimony from plaintiffs and from Ronan establishes that all three individuals were readily able to observe the puddle of water after Jonathan fell. In contrast, no evidence was submitted regarding the extent to which the water was visible before Jonathan's fall. Neither plaintiff claims to have specifically observed the tile floor when entering the hotel before Jonathan's fall. Indeed, Randy testified that he did not notice the water before Jonathan's fall because his attention was fixed on the family dog rather than on the floor. Similarly, and contrary to plaintiffs' argument on appeal, Kathy did not state that she was unable to observe the water before Jonathan's fall, only that she did not notice it until after the fact:

---

[2] The parties do not dispute that Jonathan was an invitee of defendant.

*Q*. No big deal. So what was it? Did you see what caused him to fall?

*A*. Yes, there was a puddle.

*Q*. When did you first see the puddle?

*A*. After he fell. It was dark outside when we came in, so the only light we had was whatever was in between the two double doors.

To the extent Kathy testified that it was dark outside when she and Jonathan entered the hotel, she nonetheless admitted that the vestibule was lighted and did not claim that she had any difficulty observing the puddle, which she estimated to be one foot in diameter, after Jonathan's fall. And while Kathy testified that she did not observe the puddle before Jonathan's fall, she trailed behind Jonathan as they entered the hotel. Finally, plaintiffs do not claim that their view of the floor inside the vestibule was obscured by the sliding doors remaining closed until their approach. The documentary evidence thus uniformly demonstrates that the water was readily apparent.

This Court has previously determined that hazards readily observable after a plaintiff has fallen are open and obvious, even if the plaintiff did not notice them beforehand. For example, in *Kennedy v Great Atlantic & Pacific Tea Co*, 274 Mich App 710, 713; 737 NW2d 179 (2007), the plaintiff slipped and fell on crushed grapes and grape residue on a grocery store floor. Although the plaintiff argued that the grape residue was similar in color to the beige flooring and was therefore inconspicuous, the Court noted that the plaintiff and multiple witnesses testified the hazard was readily apparent once they examined the floor and that nothing would have obscured it from view. *Id*. Reasoning that the plaintiff "would have noticed the potentially hazardous condition had he been paying attention," the Court concluded that the danger was open and obvious *Id*. at 714. Similarly, in *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 695; 822 NW2d 254 (2012), the plaintiff slipped and fell on a patch of ice but admitted that she was able to see it after she had fallen and that she was aware of signs cautioning guests that common areas could be wet, snow-covered, or slippery. An employee of the defendant also testified that the ice was readily evident when he assisted the plaintiff after her fall. *Id*. Accordingly, the Court determined that the ice was an open and obvious danger, as the plaintiff "knew of the danger of ice on the patio[,] and other indicia of a potentially icy condition would have alerted an average user of ordinary intelligence to discover the danger on casual inspection." *Id*.

Plaintiffs instead compare the present case to *Watts v Mich Multi-King, Inc*, 291 Mich App 98; 804 NW2d 569 (2010), and to *Bialick v Megan Mary, Inc*, 286 Mich App 359; 780 NW2d 599 (2009). In both cases, the plaintiffs slipped and fell on floors they averred were not visibly wet, in spite of the fact that they specifically inspected the floors for hazards or caution signs as they walked. *Watts*, 291 Mich App at 100-101; *Bialick*, 286 Mich App at 363. In light of the plaintiffs' testimony that they were unable to identify any spills, standing water, or other hazardous conditions before falling, this Court concluded that there existed a question of fact regarding whether the dangerous conditions were open and obvious. *Watts*, 291 Mich App at 105; *Bialick*, 286 Mich App at 364. However, we agree with the trial court's assessment that *Watts* and *Bialick* are inapposite. As distinguished from those cases, the evidence in the present

-4-

case establishes both that plaintiffs did not specifically observe the floor for potential hazards before Jonathan's fall and that the water was plainly visible after the fact. Accordingly, adhering to the analysis set forth by this Court in *Kennedy* and *Buhalis*, we conclude that the water could have been observed by an individual of ordinary intelligence upon casual inspection.

Next, plaintiffs contend that, even if the water was open and obvious, special aspects rendered it an unreasonably dangerous risk. Specifically, plaintiffs maintain that the danger was effectively unavoidable, as they were compelled to encounter the puddle of water as they passed through the hotel's main entrance with Jonathan. "[A]n 'effectively unavoidable' condition must be an inherently dangerous hazard that a person is inescapably required to confront under the circumstances." *Hoffner*, 492 Mich at 456. By way of illustration, our Supreme Court has hypothesized that an unavoidable danger would exist if a commercial building's only exit were surrounded by standing water, necessitating customers who wished to exit to pass through the water. *Lugo*, 464 Mich at 518. Similarly, plaintiffs rely upon this Court's opinion in *Lymon v Freedland*, 314 Mich App 746, 761-762; 887 NW2d 456 (2016), in which the plaintiff, a home healthcare aide, was injured as she attempted to traverse by foot the patient's ice-covered driveway. Because all routes to the home were equally hazardous and because the plaintiff was "an essential home healthcare aide" who did not have the option of abandoning her patient by failing to appear for work, this Court concluded that a question of fact existed with respect to whether the open and obvious danger was effectively unavoidable. *Id*. at 762-763.

In the present case, the evidence does not support plaintiffs' position that the family was inescapably required to confront the puddle of water. Kathy testified that the puddle was located to the left of center of the first set of sliding doors and spanned approximately one foot in diameter. Likewise, Randy testified that the puddle covered roughly one floor tile. Photographs of the front entrance of the hotel illustrate that there are several feet of space at the sliding doors through which guests may pass to enter. Indeed, Mason estimated the space to be approximately five feet in width. Plaintiffs fail to account for the fact that a guest could easily navigate around a one-foot puddle in the entryway. Moreover, Mason testified that the hotel has additional side entrances that may be accessed with a hotel room key. Under Michigan case law, a risk is not effectively unavoidable if an alternative route is available. *Joyce v Rubin*, 249 Mich App 231, 242; 642 NW2d 360 (2002). Though Randy testified that using a side entrance would have been inconvenient, plaintiffs have not demonstrated that it would have been impracticable. Accordingly, the open and obvious danger posed by the puddle of water was not effectively unavoidable.

Because we conclude that the puddle of water was an open and obvious condition obviating defendant's duty of care owed to plaintiffs, we decline to reach plaintiffs' contention that defendant had constructive notice of the hazard and therefore a duty to warn.

3. MISSING SURVEILLANCE VIDEO

This Court's conclusion is unaffected by plaintiffs' argument that defendant failed to produce surveillance footage capturing a portion of the incident.[3]  According to defendant, the surveillance video was automatically overwritten on the system's hard drive at some unknown point in time.[4]  Plaintiffs maintain that the trial court should have afforded them the benefit of an adverse inference under M Civ JI 6.01 regarding the placement of the area rug, thus raising a question of fact with respect to defendant's negligence in maintaining the premises.

A trial court has the inherent authority to sanction a party for its failure to preserve evidence, including instructing the jury that it may draw an inference adverse to the culpable party. *Brenner v Kolk*, 226 Mich App 149, 160-161; 573 NW2d 65 (1997).  Under M Civ JI 6.01,

> [a] jury may draw an adverse inference against a party that has failed to produce evidence only when: (1) the evidence was under the party's control and could have been produced; (2) the party lacks a reasonable excuse for its failure to produce the evidence; and (3) the evidence is material, not merely cumulative, and not equally available to the other party. [*Ward v Consol Rail Corp*, 472 Mich 77, 85-86; 693 NW2d 366 (2005).]

An inference under M Civ JI 6.01 simply *permits* a fact-finder to conclude that evidence would have been adverse to the withholding party, leaving the fact-finder free to decide the matter for itself. *Lagalo v Allied Corp*, 233 Mich App 514, 520; 592 NW2d 786 (1999), abrogated on other grounds by *Kelly v Builders Square*, 465 Mich 29, 38 (2001).

In the present case, plaintiffs fail to articulate how an adverse inference would have altered the trial court's analysis at the summary disposition stage.  It is a fundamental principle of appellate practice that "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority." *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003) (citations omitted).  Further, because defendant was the moving party, the trial court was already compelled to view all evidence, and to draw all reasonable inferences, in the light most favorable to plaintiffs.  Thus, an adverse inference under M Civ JI 6.01 would serve as a mere duplication of the trial court's standard of review in considering a motion for summary disposition.  Finally, any information to be gleaned

---

[3] Though this issue was not addressed by the trial court, we are not precluded from reviewing it on appeal.  See *Loutts v Loutts*, 298 Mich App 21, 23-24; 826 NW2d 152 (2012) (holding that a claim raised before the trial court and pursued on appeal is preserved for appellate review).

[4] Mason testified that he did not delete the video from the hard drive but simply took no further steps to permanently save or copy the file.  Though Mason was uncertain of the length of time surveillance video is typically saved in the system, the present litigation had not yet been initiated at the time he left his employment with defendant in February 2016.

from the video with respect to defendant's allegedly negligent placement of the area rug is immaterial to this Court's determination that summary disposition was appropriately granted because the hazard was open and obvious. Accordingly, plaintiffs' argument relative to the surveillance video is unavailing.

Affirmed.

/s/ Mark T. Boonstra
/s/ Kathleen Jansen
/s/ Michael F. Gadola