# STATE OF MICHIGAN

# COURT OF APPEALS

JOYANNA LYMON,

        Plaintiff-Appellee,

v

KAREN FREEDLAND, JIM FREEDLAND, and
KAREN FREEDLAND TRUST,

        Defendants-Appellants,

FOR PUBLICATION
March 29, 2016
9:10 a.m.

No. 323926
Washtenaw Circuit Court
LC No. 13-000446-NZ

Before: SHAPIRO, P.J., and O'CONNELL and BORRELLO, JJ.

BORRELLO, J.

In this premises liability action, on June 5, 2014, the trial court entered an order denying defendants' motion for summary disposition under MCR 2.116(C)(10). Subsequently, the parties stipulated to forego trial and finalize the case to allow defendants to appeal the June 5, 2014, order by right. The parties agreed that the total amount of plaintiff's damages, pre-judgment interest, costs and attorney fees was $330,000, payment contingent on the outcome of defendants' appeal. Pursuant to the stipulation, on September 29, 2014, the trial court entered a judgment in favor of plaintiff conditioned on the premise that defendants' preserved their right to appeal. Defendants now appeal the judgment by right, arguing that the trial court erred in denying their motion for summary disposition. For the reasons set forth in this opinion, we affirm.

## I. FACTS

In November 2012, Gloria Freedland moved from an assisted living center into her daughter Karen Freedland's home in Ann Arbor ("Freedland home"). Gloria was 84 years old and suffered from dementia and Parkinson's disease and Karen contracted with Interim Health Care (Interim), a healthcare staffing agency owned by Don Ottomeyer, to have health care aides provide in-home care for Gloria. At the time, plaintiff and Nadia Hamad worked for Interim as certified nursing aides. From November 2012 to January 2013, plaintiff worked two to three days per week for 15 hours per day at the Freedland home providing round-the-clock care for Gloria. Because of her health condition, Gloria needed constant care and could not be left alone.

-1-

The Freedland home was located on a hill and had two levels. A steep asphalt driveway located to the right of the home led to a two-stall attached garage. The garage had a door that provided access to the home and the lower level of the home where Gloria stayed. The health care aides entered and exited the home through the garage.

On January 1, 2013, plaintiff worked at the Freedland home. Plaintiff parked her vehicle on the street because her vehicle previously "bottomed out" when she attempted to traverse the driveway at the home. Plaintiff worked overnight that day and recalled that there had been rain the previous few days and there was "slippery slush" on the driveway. Plaintiff mentioned the condition of the driveway to Karen and Karen instructed plaintiff to drive all the way up the driveway to avoid the slippery conditions. However, plaintiff explained that her vehicle could not make it up the driveway. Plaintiff left the Freedland residence on the morning of January 2, 2013, and she had to do a "penguin waddle" down the driveway to get to her vehicle. Plaintiff informed Kristen Lavagnino, the office manager at Interim, that the Freedland's driveway was "getting bad."

Plaintiff testified that it snowed from Tuesday January 2, 2013 to Thursday, January 4, 2013. Plaintiff was scheduled to relieve Hamad for the overnight shift on January 4, 2013, and plaintiff learned that Karen was scheduled to be out of town for the weekend. Plaintiff arrived at the Freedland residence at about 6:00 p.m. on January 4, 2013. It was dark, but plaintiff observed that the driveway was "by far" in worse shape than it had been two days prior. The driveway was covered in snow with ice build-up underneath. Plaintiff testified that she could tell the driveway and the yard apart, but she could not walk on the yard because it was on an incline, and stated that the only way it could be safely traversed was "maybe with ski poles." Plaintiff parked on the street and proceeded to walk up the driveway toward the home. About half way up the drive, plaintiff slipped and fell. Plaintiff felt a "numbing/tingling" sensation, but she proceeded to get up and walk to the house. Plaintiff entered and briefly spoke with Hamad who then departed the premises. After Hamad left, plaintiff explained that she started feeling "excruciating pain," so she called Ottomeyer and informed him that she had an emergency. Ottomeyer informed plaintiff that he would drive to the Freedland home, but it would take about 20 minutes. Plaintiff could not wait for Ottomeyer so she called her boyfriend Desmond Jones and asked him to come help her. Plaintiff testified that she then went into the garage and eventually ended up outside the home on the flat part of the driveway with Jones. Upon his arrival, Jones attempted to move plaintiff down the driveway to his vehicle in a sled, but failed. At some point, plaintiff called 911 and EMT arrived at the scene with two vehicles. Plaintiff suffered a severely fractured tibia and fibula which required surgery and months of rehabilitation. Plaintiff was unable to work and at the time of her deposition, plaintiff needed to use a walker to ambulate.

Several witnesses testified about the condition of the driveway at the Freedland residence. Hamad testified that Karen never cleared or salted the driveway and it was icy on numerous occasions, although the top landing part of the driveway where people walked to the garage was flat and sometimes it was shoveled. Hamad explained that on January 4, 2014, the driveway was "cleared a little," but "there were good sheets of ice," on the driveway, it was not salted, and it was "very icy and slippery." Hamad testified that plaintiff relieved her that evening, but plaintiff did not mention that she fell. Shortly after Hamad left the residence, she received a call from Ottomeyer who asked her to return for the overnight shift to cover for

plaintiff. Hamad agreed, and when she returned to the home she observed EMT vehicles; plaintiff was on a stretcher screaming in pain. Hamad slipped but did not fall on the driveway and explained that she walked "on the side where the snow is so I didn't fall." Hamad explained that it was possible to get to the home without walking on the driveway because, "you can always walk up the sides where there's snow so you don't slip on ice, which is mostly in the middle." However, Hamad agreed that at some point a person would have to walk on the top part of the driveway to get to the door. Hamad explained that the top part of the driveway was flat and it was not as icy as the remainder of the driveway. Hamad also agreed that there was a bush in the yard that was near the driveway so that there was a very narrow path between the bush and the driveway.

Jones and Ottomeyer both testified about the condition of the driveway. Jones testified that the driveway was covered in ice that was probably over one-inch thick. Jones attempted to drive his vehicle up the driveway, but it slid back down. Jones explained that he walked on the side on the snow-covered grass to get to the home so that he could avoid the driveway. Ottomeyer testified that he and his wife arrived at the Freedland home and observed that the driveway was icy. Both Ottomeyer and his wife walked on the yard next to the driveway to get to the Freedland home because the snow-covered grass "was not as slick." Ottomeyer testified that the driveway was always icy and slippery and he "had asked all caregivers to walk on the side of the driveway on the grass because it's not as slick." Ottomeyer explained that plaintiff was instructed to walk on the grass to get to the Freedland's home and he testified that plaintiff stated that she should have walked up the side on the grass. However, Ottomeyer did not recall if the bush near the obstructed part of this route.

Lavagnino testified that she went to the Freedland residence for a home visit sometime before the accident and the driveway was slippery on that occasion. Lavagnino testified that plaintiff raised concerns about the driveway a few days before the accident. She also testified that she informed Ottomeyer about the slippery driveway, but she did not call Karen because Karen was going out of town. Lavagnino testified that Karen previously instructed that Interim's health care workers should park at the top of the driveway to avoid the ice. Lavagnino testified that it was hazardous to walk up the Freedland's driveway and explained that the eves from the roof on the home ran water to the middle of the driveway where plaintiff fell. Lavagnino agreed that a person could walk on the snow next to the driveway to avoid the driveway, but she agreed that one would probably have to walk on part of the driveway to get around foliage that abutted the driveway.

On July 29, 2013, plaintiff commenced this action alleging that defendants negligently maintained the driveway at their premises where the driveway was unavoidable and where plaintiff had to traverse the driveway in the course of her employment as a home health aide.

Following discovery, on February 9, 2014, defendants moved for summary disposition pursuant to MCR 2.116(C)(10). Defendants argued that plaintiff's claim failed where the danger posed by the driveway was open and obvious and where there were no special circumstances that applied. In particular, the driveway did not create an unreasonable risk of severe injury or death because snow and ice cannot constitute an unreasonable risk of severe injury or death. In addition, defendants argued that the danger was not effectively unavoidable where plaintiff could have taken a different route to the house by walking on the snow-covered yard.

Plaintiff responded, arguing that her claim was not barred by the open and obvious doctrine because there were special aspects related to the danger. Specifically, plaintiff argued that the driveway presented an unreasonable risk of severe injury or death where the driveway was very steep and covered in ice. Additionally, plaintiff argued that the danger was effectively unavoidable. In particular, plaintiff argued that her employment compelled her to go into the house and there was no safe path to the house where the snow-covered area adjacent to the driveway was dangerous and presented uncovered risks. Plaintiff maintained that she was presented with two perilous paths to the house and therefore the danger was unavoidable.

Following oral arguments, the trial court denied defendants' motion for summary disposition, explaining as follows:

> Clearly for the Court the issue is . . . to determine whether or not what we have here is in fact um- -a truly special aspect. Um- - I think it's a close question, frankly . . . I mean, to be effectively unavoidable, is there an unreasonable risk of harm given the particular facts, circumstances in this case. Well, it's clear that there's no dispute as to at least the condition of the drive being in such a way that in fact it was ice covered in parts, if not over its entirety; that clearly it had a pitch to it. Ah—there's been . . . evidence cited by Counsel . . . regarding other people who were obviously able to go up the drive and didn't fall, whereas others came on the scene and did fall, including the ambulance.

> [I]t's clear form the case law that in fact if there's an alternate route . . . one should take it . . . just reviewing the photographs that were recited and having read the pleadings, the question becomes is that truly . . . unobstructed alternate route when in fact you've got, it's obvious, a- - a snow-covered and perhaps ice-covered portion that um- - requires while you can go in the yard in some way . . . in order to avoid that one huge bush that would require that . . . Ms. Lymon would have to walk, oh, I can't tell the foot distance, but a significant ways in from the driveway to get around, and then it's unclear whether or not it's clear all the way to the back entrance.

> I'm gonna deny the motion for summary disposition, finding that in fact . . . was effectively unavoidable. That based on the specific language of [*Hoffner v Lanctoe*, 492 Mich 450; 821 NW2d 88 (2012)] and the very narrow exceptions it is drawing, this case at least falls within the ambit of the determination as to a jury as to whether or not there's negligence and/or whether or not there—the actions taken by Ms. Lymon were in fact reasonable or not.

Thereafter, the parties stipulated to forego trial as set forth above and the trial court entered judgment in favor of plaintiff pending the resolution of this appeal.

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition to determine whether the moving party is entitled to judgment as a matter of law." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). "In reviewing a

motion brought under MCR 2.116(C)(10), we review the evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a genuine issue regarding any material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds could differ." *Bennett v Detroit Police Chief*, 274 Mich App 307, 317; 732 NW2d 164 (2006).

## III. ANALYSIS

Defendants argue that the trial court erred in denying their motion for summary disposition because plaintiff's claim failed in that the icy driveway presented an open and obvious hazard that did not contain special aspects.

"Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land." *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 691; 822 NW2d 254 (2012). Ordinary negligence claims are grounded on the underlying premise that a person has a duty to conform his conduct to an applicable standard of care when undertaking an activity. *Laier v Kitchen*, 266 Mich App 482, 493; 702 NW2d 199 (2005). In contrast, "[i]n a premises liability claim, liability emanates merely from the defendant's duty as an owner, possessor, or occupier of land." *Id*. Thus, "[w]hen an injury develops from a condition of the land, rather than emanating from an activity or conduct that created the condition on the property, the action sounds in premises liability." *Woodman v Kera, LLC*, 280 Mich App 125, 153, 760 NW2d 641 (2008), aff'd 486 Mich 228 (2010), citing *James v Alberts*, 464 Mich 12, 18-19; 626 NW2d 158 (2001).

In this case, reading plaintiff's complaint as a whole it is apparent that plaintiff's complaint sounded in premises liability in that she alleged that her injury arose from a condition on the land—i.e. the icy driveway. See *Adams v Adams*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007) (noting that "[i]t is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim.") Accordingly, we proceed by applying the well-established framework that governs a premises liability claim.

"The starting point for any discussion of the rules governing premises liability law is establishing what duty a premises possessor owes to those who come onto his land." *Hoffner*, 492 Mich at 460. "With regard to invitees,[1] a landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land." *Id*. (footnote omitted). In the context of ice and snow:

> a premises owner has a duty to exercise reasonable care to diminish the hazards of ice and snow accumulation, requiring that reasonable measures be taken within a reasonable time after an accumulation of ice and snow to diminish the hazard of injury to the invitee. [*Id*. at 464 (quotation marks and citation omitted).]

---

[1] Neither party disputes that plaintiff was a business invitee at the Freedland residence.

However, a landowner's duty does not generally encompass defects that are "open and obvious." *Id*. at 460-461. "The possessor of land owes no duty to protect or warn of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard. . . ." *Id*. (quotation marks and citation omitted). Whether a danger is open and obvious involves an objective inquiry to determine "whether it is reasonable to expect that an average person with ordinary intelligence would have discovered [the danger] upon casual inspection." *Id*. at 461 (quotation marks, citations, and footnote omitted).

In this case, plaintiff slipped on a steep, ice-covered driveway. Although ice is transparent and difficult to observe in many circumstances, our Supreme Court has explained that "wintry conditions, like any other condition on the premises, may be deemed open and obvious." *Hoffner*, 492 Mich at 464; see also *id*. at 473 (holding that an ice-covered entryway to a fitness center was open and obvious and avoidable); *Perkoviq v Delcor Homes-Lake Shore Pointe, Ltd*, 466 Mich 11, 16; 643 NW2d 212 (2002) (holding that frost and ice on a roof was an open and obvious hazard); *Cole v Henry Ford Health System*, 497 Mich 881; 854 NW2d 717 (2014) (noting in an order that "so called 'black ice'" in a parking lot posed an open and obvious hazard). Indeed, this Court has held that "as a matter of law . . . by its very nature, a snow covered surface presents an open and obvious danger because of the high probability that it may be slippery." *Ververis v Hartfield Lanes*, 271 Mich App 61, 65; 718 NW2d 382 (2006).

Although the driveway amounted to an open-and-obvious hazard, this does not end our inquiry because "liability may arise when special aspects of a condition make even an open and obvious risk unreasonable." *Hoffner*, 492 Mich at 461. "When such special aspects exist, a premises possessor must take reasonable steps to protect an invitee from that *unreasonable* risk of harm." *Id*. Two such instances that can constitute "special aspects" include "when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable*" because these conditions "give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided." *Id*. at 463 (quotation marks and citations omitted). "[W]hen a plaintiff demonstrates that a special aspect exists or that there is a genuine issue of material fact regarding whether a special aspect exists, tort recovery may be permitted if the defendant breaches his duty of reasonable care." *Id*.

Plaintiff contends that the icy driveway contained a special aspect in that it presented a risk of high severity of harm such that it amounted to an unreasonably dangerous condition.

In *Lugo v Ameritech Corp*, 464 Mich 512, 518; 629 NW2d 384 (2001), our Supreme Court provided the following illustration of an unreasonably dangerous condition:

> consider an unguarded thirty foot deep pit in the middle of a parking lot. The condition might well be open and obvious, and one would likely be capable of avoiding the danger. Nevertheless, this situation would present such a *substantial risk of death or severe injury* to one who fell in the pit that it would be unreasonably dangerous to maintain the condition, at least absent reasonable warnings or other remedial measures being taken. [Emphasis added.]

Plaintiff contends that the driveway presented an unreasonable risk of harm because it was steep and covered in snow and ice. Plaintiff also notes that eves directed water onto the

-6-

driveway. Although the slippery conditions coupled with the nature of the sloped driveway presented unsafe conditions, our Supreme Court has set an extraordinarily high bar for a condition to constitute an unreasonable risk of harm such that it must present a "substantial risk of death or severe injury." *Id.* Based on this heightened standard, courts have repeatedly held that ice and snow generally do not meet this threshold. See e.g. *Perkoviq*, 466 Mich at 19-20 (holding that "[t]he mere presence of ice, snow, or frost on a sloped rooftop generally does not create an unreasonably dangerous condition."); *Corey v Davenport College of Business*, 251 Mich App 1, 6-7; 649 NW2d 392 (2002) (holding that ice-covered steps did not present a high likelihood of harm or severity of harm); *Royce v Chatwell Club Apartments*, 276 Mich App 389, 395-396; 740 NW2d 547 (2007) (holding that "The risk of slipping and falling on ice is not sufficiently similar to those special aspects discussed in *Lugo* to constitute a *uniquely high* likelihood or severity of harm and remove the condition from the open and obvious danger doctrine.") Similarly, in this case, the ice and snow covered driveway did not contain special aspects that created a high likelihood of harm or severity of harm as set forth in *Lugo*, 464 Mich at 518.

Plaintiff also argues that the hazardous driveway was effectively unavoidable. In *Lugo*, 464 Mich at 518, our Supreme Court provided an example of an "effectively unavoidable" hazard as follows:

> An illustration of such a situation might involve, for example, a commercial building with only one exit for the general public where the floor is covered with standing water. While the condition is open and obvious, a customer wishing to exit the store must leave the store through the water. In other words, the open and obvious condition is effectively unavoidable.

In *Hoffner*, our Supreme Court reiterated that an "'effectively unavoidable' condition must be an inherently dangerous hazard that a person is inescapably required to confront under the circumstances." *Hoffner*, 492 Mich at 456.

In *Joyce v Rubin*, 249 Mich App 231, 238; 642 NW2d 360 (2002); this Court addressed whether an icy walkway was effectively unavoidable. In that case, the plaintiff was removing personal belongings from the defendants' home during snowy weather when she slipped and fell on the sidewalk leading to the front door. *Id.* at 233. The plaintiff argued, in part, that the open and obvious condition was effectively unavoidable because the defendants refused to provide her an alternate route, refused to provide safety measures, and refused to provide a rug for traction. *Id.* at 241. In rejecting the plaintiff's argument, this Court explained that the plaintiff could have insisted on utilizing an alternative route or removed her personal items on another day. *Id.* at 242. This Court explained as follows:

> unlike the example in *Lugo,* Joyce was not effectively trapped inside a building so that she *must* encounter the open and obvious condition in order to get out. Joyce specifically testified that, after she slipped twice on the sidewalk, she *walked around the regular pathway* to avoid the slippery condition. Therefore, though this is a close case, Joyce's own testimony established that she could have used an available, alternative route to avoid the snowy sidewalk. While [the defendants'] alleged refusal to place a rug on the sidewalk or allow access

through the garage, if true, may have been inhospitable, no reasonable juror could conclude that the aspects of the condition were so unavoidable that Joyce was effectively forced to encounter the condition. [*Id*. at 242-243 (emphasis in original).]

This case is dissimilar to *Joyce*. Unlike the plaintiff in *Joyce*, here, plaintiff was compelled to enter the premises because she was a home health aide who could not abandon her patient. As an essential home health care aide, plaintiff did not have the "option" of failing to appear for work. Gloria was an elderly patient with dementia and Parkinson's disease and plaintiff was scheduled to care for her throughout the night. Hence, abandoning Gloria was not an option, leaving plaintiff compelled to traverse two equally hazardous pathways. On the one hand, plaintiff could traverse the steep snowy and icy driveway. On the other hand, plaintiff could have traversed the steep yard next to the driveway, but this route also contained slippery hazardous conditions. Evidence showed that some individuals were able to successfully navigate this route to the home. This evidence supported that the hazards on the driveway may have been avoidable. However, other evidence left open a question of fact as to whether the yard provided a viable alternative route. Evidence showed that the yard was steep and it was covered in snow. As this Court has previously explained, "a snow-covered surface might always, by its very nature, present an open and obvious danger because it is likely to be slippery as a result of underlying ice or for some other reason." *Ververis*, 271 Mich App at 61. In addition, unlike in *Joyce* where there were alternate unobstructed routes to the house, here, there was foliage next to the driveway that obstructed the path to the house. Hamad and Lavagnino both agreed that, because of the foliage, the alternate route would probably still require someone to traverse part of the driveway. Furthermore, unlike the plaintiff in *Joyce*, here, at the time plaintiff arrived at the home, she believed that she needed ski poles to traverse the alternate route.

Defendants cite *Hoffner*, 492 Mich at 450, to support their argument that the icy driveway was not effectively unavoidable. In *Hoffner*, the plaintiff had a paid membership to a fitness club that had a single entrance serviced by a sidewalk connecting the building to the parking lot. *Id*. at 456. On a January morning in 2006, the plaintiff drove to the fitness club and noticed that the entrance to the building was icy and the roof was dripping. *Id*. at 457. Because the entrance provided the only egress to the building, the plaintiff traversed the ice and in doing so, she slipped and fell, injuring her back. *Id*. In reversing both the circuit court and this Court, our Supreme Court held that the ice-covered entryway was not effectively unavoidable. *Id*. at 455-456. Our Supreme Court held that, although the plaintiff had a contractual right to enter the premises and utilize her membership, she was not compelled to do so, explaining:

An 'effectively unavoidable' hazard must truly be, for all practical purposes, one that a person is required to confront under the circumstances. A general interest in using, or even a contractual right to use, a business's services simply does not equate with a compulsion to confront a hazard and does not rise to the level of a "special aspect" characterized by its *unreasonable risk of harm*.

* * *

Plaintiff freely admits that she knew that the ice posed a danger, but that she saw the danger as surmountable and the risk apparently worth assuming in

order to take part in a recreational activity. Plaintiff was not forced to confront the risk, as even she admits; she was not "trapped" in the building or compelled by extenuating circumstances with no choice but to traverse a previously unknown risk. In other words, *the danger was not unavoidable,* or even effectively so. [*Id*. at 472-473.]

Contrary to *Hoffner*, in this case, there was a question of fact as to whether plaintiff was compelled to confront the hazardous risk posed by the snowy and icy conditions at the Freedland residence. Unlike the plaintiff in *Hoffner*, here, a reasonable juror could conclude that plaintiff did not have a choice as to whether to confront the icy conditions. As a home health care aide, plaintiff did not have the option of abandoning her patient, an elderly woman who suffered from dementia and Parkinson's disease. Plaintiff did not confront the hazard merely because she desired to participate in a recreational activity, but rather, a rational juror could conclude that she was "compelled by extenuating circumstances" and had "no choice" but to traverse the risk. *Id*. at 473.

In short, plaintiff arrived at a premises where she was surrounded by slippery winter conditions. Our review of the record leads us to conclude that all routes to the home were covered in ice and snow. Plaintiff was faced with two open and obvious hazards that posed a danger to her safety. While other individuals were able to successfully navigate the slippery yard to access the home, reasonable minds could differ as to whether traversing the yard provided a viable means by which plaintiff could have effectively avoided the slippery conditions. Accordingly, the trial court did not err in denying defendants' motion for summary disposition because there was a genuine issue of material fact as to whether the open and obvious hazard in this case contained special aspects such that defendants retained a duty to "exercise reasonable care to diminish the hazards of ice and snow accumulation" on the driveway and exercise "reasonable measures . . . within a reasonable time after an accumulation of ice and snow to diminish the hazard of injury to the invitee." *Id*. at 460.

Affirmed. Plaintiff having prevailed, may tax costs. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro
/s/ Peter D. O'Connell