*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DONNA LIVINGS,

        Plaintiff-Appellee,

v

SAGE'S INVESTMENT GROUP, LLC,

        Defendant-Appellant,

and

T & J LANDSCAPING & SNOW REMOVAL,
INC., and GRAND DIMITRE'S OF
EASTPOINTE FAMILY DINING,

        Defendants.

UNPUBLISHED
February 26, 2019

No. 339152
Macomb Circuit Court
LC No. 2016-001819-NI

Before: TUKEL, P.J., and BECKERING and SHAPIRO, JJ.

TUKEL, P.J. (*concurring in part and dissenting in part*).

I concur with the majority that there is no question of fact regarding whether defendant Sage's Investment Group, LLC (SIG), exercised "dominion and control" over the parking lot. I also concur that the hazard was open and obvious. However, I disagree with the majority that there were special aspects present. For the reasons provided below, I would hold that because there were no special aspects present, the open and obvious doctrine insulates defendant from liability.

As the majority correctly points out, plaintiff was a business invitee. And as a result of that relationship with defendant, defendant had a "duty to use reasonable care to protect [plaintiff] from unreasonable risks of harm posed by dangerous conditions on the owner's land." *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012). A landowner breaches this duty "when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Id.* However, "[t]he possessor of land owes no duty to protect or warn of

dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Id.* at 460-461 (quotation marks and citation omitted). And as the majority correctly determined, the hazard was open and obvious.

However, regardless of a hazard being open and obvious, liability nonetheless may still arise when special aspects of the condition exist. Such special aspects render even an open and obvious risk "unreasonably dangerous" and can manifest in two ways: "(1) the hazard is, in and of itself, unreasonably dangerous or (2) the hazard was rendered unreasonably dangerous because it was effectively unavoidable for the injured party." *Bullard v Oakwood Annapolis Hosp*, 308 Mich App 403, 410; 864 NW2d 591 (2014).

The majority opines that the hazard, while open and obvious, was unreasonably dangerous because it was effectively unavoidable. Because the caselaw in this state requires a different conclusion, this is where my opinion diverges from that of the majority. Notably, "[t]he 'special aspects' exception to the open and obvious doctrine for hazards that are effectively unavoidable is a *limited* exception . . . ." *Hoffner*, 492 Mich at 468 (emphasis added). Further, "[u]navoidabilty is characterized by an *inability to be avoided*, an *inescapable* result, or the *inevitability* of a given outcome." *Id.* Thus, "the standard for 'effective unavoidability' is that a person, for all practical purposes, must be *required* or *compelled* to confront a dangerous hazard." *Id.* at 469. Moreover, as the caselaw demonstrates, "[t]he mere fact that a plaintiff's employment might involve facing an open and obvious hazard does not make the open and obvious hazard effectively unavoidable." *Bullard*, 308 Mich App at 412, citing *Hoffner*, 492 Mich at 471-472 and *Perkoviq v Delcor Homes-Lake Shore Pointe Ltd*, 466 Mich 11, 18; 643 NW2d 212 (2002). It is this aspect of unavoidability that the majority fails to fully address.

In *Bullard*, the plaintiff's work responsibilities included inspecting a generator that was located on top of a roof. *Bullard*, 308 Mich App at 406. There was only one way to approach the generator: the plaintiff had "to climb an indoor ladder to reach the roof, open a hatch, cross a stone walkway, scale another ladder, cross a metal catwalk to the generator, and finally walk across three 2 x 8 planks to reach the generator's control panel." *Id.* The plaintiff slipped and fell on ice that had formed on the 2 x 8 planks, which resulted in him falling 5 or 6 feet onto the roof. *Id.* The *Bullard* Court acknowledged that the hazard was open and obvious, *id.* at 409, and it held that the hazard was not effectively unavoidable, *id.* at 413. The Court explained that the plaintiff's "job duties did not mandate that he encounter an obvious hazard"; instead, the plaintiff "could have made different choices that would have prevented him from encountering the ice," including turning back and declining to perform the inspection. *Id.*

In *Perkoviq*, the plaintiff brought a number of claims, including one for premises liability against the defendant landowner. The plaintiff was working as a painter at a new home construction site. *Perkoviq*, 466 Mich at 12. His job on that particular November day was to climb up onto the roofs of three homes and paint the upper levels of their exteriors. *Id.* at 13. He was working on the roof of one of those homes when he slipped on ice and fell approximately 20 feet to the ground below. *Id.* A unanimous *Perkoviq* Court held that summary disposition was warranted in favor of the defendant because the plaintiff presented no evidence that the icy conditions on the roof, although open and obvious, were "unreasonably dangerous." *Id.* at 19; *id.* at 20 (WEAVER, J., concurring).

In *Hoffner*, our Supreme Court was asked to decide whether a health club member, who wanted to use the health club facilities at the defendants' property, encountered an effectively unavoidable hazard when there was ice and snow in front of the only entrance to the health club. *Hoffner*, 492 Mich at 457-458, 465. The Court held that, although the plaintiff had a contractual relationship which gave her the right to access to the health club as a paid member, the hazard was nevertheless avoidable because she was not forced to enter the building at that particular time. *Id.* at 473. The *Hoffner* Court at one point noted that if the plaintiff in *Perkoviq* could not sustain his claim of premises liability, then *a fortiori*, the plaintiff in *Hoffner* could not either. The Court explained, "[I]t cannot be said that compulsion to confront a hazard by *the requirement of employment* is any less 'avoidable' than the need to confront a hazard in order to enjoy the privileges provided by a contractual relationship, such as membership in a fitness club." *Id.* at 471-472.

Thus, the requirements of employment to encounter open and obvious dangers generally do not create special aspects under the law because, regardless of one's employment, one still has a personal choice whether to encounter a particular hazard. Cf. *Hoffner*, 492 Mich at 471-472; *Bullard*, 308 Mich App at 413. However, this Court in *Lymon v Freedland*, 314 Mich App 746; 887 NW2d 456 (2016), created an exception to this general rule. In *Lymon*, the plaintiff was a healthcare aide who provided in-home care for individuals. The plaintiff's employer had an elderly client who suffered from dementia and Parkinson's disease, required constant care, and could not be left alone. *Id.* at 749-750. While attempting to walk up the driveway to the client's home, the plaintiff slipped and fell on the severe snowy and icy conditions,[1] injuring herself. The Court held that the conditions were open and obvious. *Id.* at 758. However, the Court also held that there was a question of fact whether special aspects existed which would obviate the general open and obvious rule. *Id.* at 763. Specifically, the Court stated,

> [T]here was a question of fact as to whether [the] plaintiff was compelled to confront the hazardous risk posed by the snowy and icy conditions at the Freeland home. A reasonable juror could conclude that, unlike the plaintiff in *Hoffner*, [the] plaintiff in this case did not have a choice about whether to confront the icy conditions. *As a home healthcare aide, [the] plaintiff did not have the option of abandoning her patient, an elderly woman who suffered from dementia and Parkinson's disease.* [*Id.* at 763-764 (emphasis added).]

Thus, implicit in the *Lymon* Court holding is that employees generally do have the option to decline to report for work when the circumstances are deemed too hazardous.[2] But for public policy reasons, some jobs, due to their importance dealing with the safety and well-being of

---

[1] There was testimony that the homeowner, the client's daughter, "never cleared or salted the driveway." *Lymon*, 314 Mich App at 751.

[2] This is not to say that an employee has the right to make this decision free from any consequences from his or her employer.

others, will effectively remove from the employee the "option" of not reporting for work, despite the attendant compulsion of confronting hazardous risks.[3]

Here, after reviewing the applicable caselaw, it is clear that even accepting as true that plaintiff would have had to walk over the hazardous parking lot to report for work, the law of our state dictates that this does not constitute an "effectively unavoidable" hazard. Plaintiff could have simply declined to enter the premises, thereby avoiding the hazard.[4] See *Bullard*, 308 Mich App at 413. The present case is easily distinguishable from *Lymon* because the ramifications of plaintiff not reporting to work at the restaurant are not comparable to those of the home health-care worker in *Lymon* not reporting to work. As the *Lymon* Court stressed, the plaintiff in that case simply "did not have the option of abandoning her patient, an elderly woman who suffered from dementia and Parkinson's disease." *Lymon*, 314 Mich App at 763-764. Here, plaintiff was reporting to work at the restaurant as a server. While this type of employment provides a service for others, it does not possess the same necessity or urgency as the healthcare aide position in *Lymon*.[5] See also *Perkoviq*, 466 Mich at 18 (holding that the plaintiff, a house painter, who had to confront snow and ice as part of his job duties, did not prove that the condition was "unreasonably dangerous"). Plaintiff's job duties here did not pertain to the well-being or safety

---

[3] Although *Lymon* is binding, I question whether it was correctly decided in light of our Supreme Court's precedent. Determining whether a particular employee has the option to not report for work necessarily involves a subjective analysis, and the test should be purely objective. See *Hoffner*, 492 Mich at 470-471 (stating that "an invitee's subjective need or desire" to enter a premises does not "affect[] an invitee's choice whether to confront an obvious hazard. To conclude otherwise would impermissibly shift the focus from an objective examination of the *premises* to an examination of the subjective beliefs of the *invitee*.").

[4] The majority claims that because "the hazard encompassed the entire premises," "it was effectively unavoidable for anyone and everyone, whether coming or going." But *Hoffner*, the case the majority cites, stands for the opposite conclusion. Indeed, although "anyone and everyone" entering and exiting the premises in *Hoffner* would have been forced to encounter the icy hazard, the Supreme Court nonetheless held that the hazard was not effectively unavoidable because the plaintiff, contrary to her personal desires and contractual expectations, *was not forced or compelled to enter the premises at that time. Hoffner*, 492 Mich at 473. Thus, it is quite clear that just because a person would have to encounter a hazard in order to enter a premises, it does not mean that the hazard is effectively unavoidable. Instead, the question is whether the person was *forced to enter the premises*. See *id*.; *Lymon*, 314 Mich App at 763-764.

[5] I would also note that this is not a situation where, if plaintiff did not enter the premises, she would have left the restaurant in the lurch without any servers. She knew that at least one other server had already reported to work and was inside the building. Indeed, the evidence presented shows that plaintiff's presence at the restaurant was not absolutely necessary to her employer or the restaurant's patrons. After she fell upon arriving at the restaurant initially, she decided, without any supervisor's input, to go home to change her wet clothes. Additionally, when she left, she was told that she "did not have to come back" because "of the way the weather was . . . ."

-4-

of others.  Accordingly, I would decline to extend *Lymon*'s holding to jobs that lack such vital, critical importance or urgency.

In sum, regardless of SIG's potential for liability based on its exercise of possession and control over the premises, the fact remains that the ice that caused plaintiff's injury was open and obvious, and no special aspects were present that would have made encountering the ice unreasonably dangerous or effectively unavoidable.  Although SIG was responsible for maintaining the parking lot, it had no duty to warn or protect plaintiff from an open and obvious condition of the land that contained no special aspects.

Accordingly, I would reverse and remand for entry of summary disposition in favor of SIG.

/s/ Jonathan Tukel