*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL CHEVILLOT,

        Plaintiff-Appellant,

v

ERIE INVESTMENTS NO. 2, LLC, doing
business as BIRCH HILL APARTMENTS,

        Defendant-Appellee.

UNPUBLISHED
May 7, 2019

No. 340897
Wayne Circuit Court
LC No. 16-004587-NO

Before: STEPHENS, P.J., and GADOLA and LETICA, JJ.

PER CURIAM.

In this suit for damages arising from a slip and fall, plaintiff, Michael Chevillot, appeals by right the trial court's order dismissing his complaint against defendant, Erie Investments No. 2, LLC (Erie), which does business as Birch Hill Apartments. Because the trial court properly granted Erie's motion for summary disposition, we affirm.

Chevillot worked for the United States Postal Service as a mail carrier. On Saturday, March 15, 2014, he delivered mail to two buildings within the Birch Hill complex without encountering any snow-covered ice. He was walking at a normal pace along the sidewalk to the only entrance to the third building when he slipped, fell, and suffered severe and permanent injuries. Chevillot sued Erie, and the trial court granted summary disposition in favor of Erie. Chevillot now appeals in this Court.

This Court reviews de novo a trial court's decision whether to grant a motion for summary disposition under MCR 2.116(C)(10). *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court also reviews de novo the proper scope and application of Michigan's common law, *Roberts v Salmi*, 308 Mich App 605, 612; 866 NW2d 460 (2014), and whether the trial court properly interpreted and applied relevant statutes, *Pransky v Falcon Group, Inc*, 311 Mich App 164, 173; 874 NW2d 367 (2015). Finally, this Court reviews for an abuse of discretion a trial court's decision whether to grant leave to amend a complaint. *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). A trial court abuses its discretion when it selects an outcome that falls outside the range

of reasonable and principled outcomes. *In re Kostin Estate*, 278 Mich App 47, 51; 748 NW2d 583 (2008).

When there are no material questions of fact, courts decide the existence of a duty as a matter of law. *Hoffner v Lanctoe*, 492 Mich 450, 460 n 12; 821 NW2d 88 (2012). A premises possessor has no duty to warn or protect a visitor from open and obvious dangers "because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Id*. at 460-461. Whether a particular hazard is open and obvious involves an objective standard; a hazard is open and obvious if an average person with ordinary intelligence would have discovered it upon casual inspection. *Id*. at 461. However, a premises possessor will remain liable if "*special aspects* of a condition make even an open and obvious risk unreasonable." *Id*. When an open and obvious danger has special aspects that make it unreasonably dangerous notwithstanding its open and obvious character, the premises possessor must still take reasonable steps to protect the invitee. *Id*.

Our Supreme Court has recognized two instances where an otherwise open and obvious danger may have special aspects that could give rise to liability:

> when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable*. *In either circumstance*, such dangers are those that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided and thus must be differentiated from those risks posed by ordinary conditions or typical open and obvious hazards. Further, we have recognized that neither a common condition nor an avoidable condition is uniquely dangerous. Thus, when a plaintiff demonstrates that a special aspect exists or that there is a genuine issue of material fact regarding whether a special aspect exists, tort recovery may be permitted if the defendant breaches his duty of reasonable care. [*Id*. at 463 (quotation marks and citations omitted).]

This Court has held that snow-covered surfaces present an open and obvious danger as a matter of law because of the high probability that such a surface may be slippery. See *Ververis v Hartfield Lanes*, 271 Mich App 61, 67; 718 NW2d 382 (2006). Moreover, Chevillot conceded before the trial court that the snow-covered ice was open and obvious, limiting his argument to whether the condition was effectively unavoidable. An effectively unavoidable open and obvious hazard is one where the invitee must encounter the hazard:

> An illustration of such a situation might involve, for example, a commercial building with only one exit for the general public where the floor is covered with standing water. While the condition is open and obvious, a customer wishing to exit the store must leave the store through the water. In other words, the open and obvious condition is effectively unavoidable. [*Lugo v Ameritech Corp, Inc*, 464 Mich 512, 518; 629 NW2d 384 (2001).]

Since the decision in *Lugo*, our Supreme Court clarified that a hazard is only effectively unavoidable if an invitee in the plaintiff's position would be required or compelled to confront the hazard:

Unavoidability is characterized by an *inability to be avoided*, an *inescapable* result, or the *inevitability* of a given outcome. Our discussion of unavoidability in *Lugo* was tempered by the use of the word "effectively," thus providing that a hazard must be unavoidable or inescapable *in effect* or *for all practical purposes*. Accordingly, the standard for "effective unavoidability" is that a person, for all practical purposes, must be *required* or *compelled* to confront a dangerous hazard. As a parallel conclusion, situations in which a person has a *choice* whether to confront a hazard cannot truly be unavoidable, or even effectively so. [*Hoffner*, 492 Mich at 468-469 (citation omitted).]

Our Supreme Court has also held that a "simple business interest" does not amount to an unquestionable necessity to visit a particular place. *Id*. at 470. The Court explained that "[n]either possessing a right to use services, nor an invitee's subjective need or desire to use services, heightens a landowner's duties to remove or warn of hazards or affects an invitee's choice whether to confront an obvious hazard." *Id*. at 471. For that reason, the Court rejected an invitee's argument that her contractual right to visit a business made the ice blocking the entrance effectively unavoidable. *Id*. at 473. It reached that result because the invitee failed to present any evidence that she was forced to encounter the hazard because she was trapped in the building or compelled by extenuating circumstances. *Id*.

On appeal, Chevillot emphasizes that our Supreme Court has stated that the test for special aspects is an objective test that looks to the condition of the premises alone. And our Supreme Court has indeed described the test as an objective test, *id*. at 470-471; *Lugo*, 464 Mich at 523-524, and it explained that the goal of the test is to permit premises possessors to anticipate what harms must be remedied, see *Hoffner*, 492 Mich at 480-481. Notwithstanding those assertions, our Supreme Court has also made it clear that the nature of the hazard must be evaluated by determining whether the condition had special aspects as to a reasonable invitee in the plaintiff's position. Accordingly, while an open and obvious hazard might be effectively unavoidable as to one class of invitees (such as invitees already inside the building), it might not be effectively unavoidable as to another class of invitees (such as invitees who had not yet entered). See *id*. at 473 (noting that the particular plaintiff involved in that case was not compelled to encounter the ice because she was not inside the building and could have declined to patronize the business). The decision in *Lymon v Freedland*, 314 Mich App 746; 887 NW2d 456 (2016), is illustrative of the latter point. In *Lymon*, this Court held that the plaintiff established a question of fact as to whether she had to encounter the slippery conditions leading to the home because she was a home healthcare aide and there to care for an elderly patient with dementia and Parkinson's disease. *Id*. at 763-764. Thus, a rational juror might conclude that the plaintiff was unable to abandon her patient and, therefore, was compelled to traverse the hazardous condition. *Id*. at 764. Consequently, in this case, the trial court had to evaluate the hazardous condition in light of whether a reasonable invitee in Chevillot's position would have been compelled by extenuating circumstances to encounter the snow-covered sidewalk.

Chevillot argues that the snow-covered sidewalk was effectively unavoidable as to him because he was a mail carrier and had an obligation to deliver the mail. This Court has held that the fact that a person's employment might involve facing an open and obvious hazard generally does not make that hazard effectively unavoidable. See *Bullard v Oakwood Annapolis Hosp*, 308 Mich App 403, 412; 864 NW2d 591 (2014). Nevertheless, Chevillot contends that his

circumstances are more like that of the home healthcare aide in *Lymon*, than the ordinary business invitee in *Hoffner* or the employee in *Bullard*. However, Chevillot admitted at his deposition that he could have refused to deliver the mail to the obstructed building. He opined that he might have been reprimanded, but he agreed that he could have called his supervisor and obtained further direction. Erie also submitted a copy of the United States Post Office's Supervisor's Handbook in which supervisors are instructed to tell carriers that they "must use good judgment and not risk personal injury as a result of exposure to icy steps, broken or rotten steps or porches, protruding nails or sharp edges on mailboxes, or other hazardous conditions." The Postal Employee's Guide to Safety likewise advises mail carriers that they are not required to risk personal injury from hazardous conditions. Accordingly, there was undisputed evidence that Chevillot was not acting under the kind of extenuating circumstances involved in *Lymon*, 314 Mich App at 763-764, which might have made it necessary for him to encounter the snow-covered sidewalk. Because Chevillot failed to establish a question of fact as to whether the snow-covered sidewalk was effectively unavoidable, the trial court did not err when it dismissed his premises liability claim under MCR 2.116(C)(10).

Chevillot also argues that the trial court erred when it denied his oral motion to amend his complaint to include a claim involving a violation of 18 USC 1701. He states that Erie's violation of that statute constitutes negligence. Chevillot's argument implicates two different theories: he appears to argue that a violation of 18 USC 1701 supports an implied civil right of action or gives rise to a presumption of negligence.

Michigan courts have recognized that, where the Legislature enacts a penal statute creating a private duty for the benefit of particular individuals, it may be appropriate to infer that the Legislature also wanted to establish a common-law civil remedy for damages caused by a violation of that statute. See *Wilkerson v Seder*, 81 Mich App 726, 728; 265 NW2d 807 (1978). However, where the penal statute merely creates a public duty, courts will not infer a common law civil remedy. *Id.*

18 USC 1701 provides, "Whoever knowingly and willfully obstructs or retards the passage of the mail, or any carrier or conveyance carrying the mail, shall be fined under this title or imprisoned not more than six months, or both." As is evident from a plain reading of the statute, Congress prohibited persons from interfering with the "passage of the mail" or the "carrying" of mail. Although mail carriers are mentioned in the statute, it is evident that they have been included to ensure the free passage of the mail they transport. The statute does not impliedly establish a private duty for the benefit of carriers; rather, the statute creates a public duty to protect the expeditious passage of mail. Moreover, Michigan courts have held that statutes that specifically require persons to clear snow and ice from sidewalks do not give rise to an implied civil cause of action against those who fail to do so. See *Figueroa v Garden City*, 169 Mich App 619, 621-623; 426 NW2d 727 (1988). Accordingly, it cannot be inferred that Congress intended to impose a duty to clear snow and ice from sidewalks or otherwise create a private right of action in favor of mail carriers when it enacted 18 USC 1701. See also *Bagguley v Barr*, 893 F Supp 967, 971 (D Kan, 1995) (finding that 18 USC 1701 imposes criminal liability for obstruction of mail, but provides no private right of action).

Our Supreme Court has also recognized that a defendant's violation of an applicable penal statute may give rise to a rebuttable presumption that the defendant's conduct was

negligent. See *Zeni v Anderson*, 397 Mich 117, 129-136; 243 NW2d 270 (1976). In reaching that conclusion, our Supreme Court specifically rejected the contention that Michigan courts had historically used a strict negligence per se approach. *Id*. at 137-142. Nevertheless, Michigan courts are not obligated to adopt a particular penal statute as the standard of care in a negligence action. See *id*. at 137-138.

As already discussed, Congress enacted 18 USC 1701 to ensure the unobstructed passage of mail; it did not impose any duty to clear snow and ice from sidewalks or to otherwise protect mail carriers as a class. Nothing in the statute's language suggests that Congress intended to regulate premises liability. It would, therefore, be inapposite to adopt that statute as the standard of care for premises liability. *Id*. at 138 & n 22. The trial court did not err to the extent that it concluded that a purported violation of 18 USC 1701 did not create a rebuttable presumption of negligence.

In any event, the trial court correctly determined that there was no evidence that Erie knowingly and willfully did anything to obstruct the passage or carrying of mail. Something is willfully done when done with the intent to bring about the particular result the statute seeks to prohibit. See *In re Erwin*, 503 Mich 1, 10-11; 921 NW2d 308 (2018). For that reason, Chevillot would have to present evidence establishing a question of fact as to whether Erie acted—or failed to act—with the intent to "obstruct[] or retard[] the passage of the mail, or any carrier or conveyance carrying the mail . . . ." 18 USC 1701. Evidence that a defendant failed to remove snow and ice—even if the omission was deliberate—would not be enough; Chevillot had to be able to prove that Erie deliberately failed to remove the snow and ice with the intent to obstruct or delay the passage of the mail or any carrier or conveyance carrying the mail. Chevillot failed to identify any evidence that Erie had that intent. Because Chevillot had no plausible basis for asserting a violation of 18 USC 1701 as a ground for liability, it would have been futile to permit Chevillot to amend his complaint to include allegations of such a violation. See *Weymers*, 454 Mich at 658. The trial court did not abuse its discretion when it denied Chevillot's oral motion for leave to amend. See *In re Kostin Estate*, 278 Mich App at 51.

Affirmed. As the prevailing party, Erie may tax its costs. MCR 7.219(A).

/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola
/s/ Anica Letica