*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CRISTAL ANDERSON,

　　　　　Plaintiff-Appellant,

v

DONALD P. MORRISSETT,

　　　　　Defendant-Appellee.

UNPUBLISHED
October 1, 2019

No. 344401
Macomb Circuit Court
LC No. 2017-000845-NO

Before: K. F. KELLY, P.J., and TUKEL and REDFORD, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting defendant's motion for summary disposition under MCR 2.116(C)(10) and dismissal of plaintiff's premises liability case. We affirm.

## I. BACKGROUND

Plaintiff, a United States Postal Service mail carrier, slipped and fell in a puddle on defendant's driveway after delivering mail to defendant's house. Plaintiff alleged that the puddle had an oily or slippery condition that caused her fall. During her deposition, she testified that she delivered mail to the house and previously noticed a puddle in the area on defendant's driveway. Plaintiff testified that when it rained, a puddle always formed on the driveway because of a gutter downspout that discharged water onto it. On the day of her accident it rained early in the morning and when she arrived at defendant's house, a two- to three-foot puddle existed on the driveway. She walked to the mailbox attached to the top of a post beside the steps that led to a door on the front porch of the house, deposited the mail, turned around and took a few steps in the puddle and fell down. The puddle felt wet with a substance mixed with the water. She testified that she noticed a brown stained color on the concrete but she could not identify any foreign substance mixed with the water.

Defendant testified that he grew up in the house and recently purchased it from his brother. He recalled that the house's downspout discharged water onto the driveway and had done so "forever." Defendant acknowledged that the area had dark staining on the driveway which he speculated came from vegetation in the landscaping. He testified that he walked

-1-

through the area and never noticed anything unusual about it and never had any problem. He did not recall it being slippery. He said that he tried to clean the stain at one time by scrubbing it with soap and water, which temporarily diminished the stain but because the water kept running from the downspout it did not permanently eliminate the stain.

Defendant moved for summary disposition under MCR 2.116(C)(10) on the ground that plaintiff failed to establish that he owed her a duty and particularly that the condition on his land was an open and obvious condition which meant that he owed plaintiff no duties. Plaintiff opposed defendant's motion, but the trial court agreed with defendant that the puddle was open and obvious entitling him to summary disposition as a matter of law.

## II. STANDARD OF REVIEW

We review de novo a trial court's summary disposition decision to determine if the moving party was entitled to judgment as a matter of law. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). We also review de novo a trial court's decision regarding whether a party owed a duty to another. *Fultz v Union-Commerce Assoc*, 470 Mich 460, 463; 683 NW2d 587 (2004). A motion brought under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim, and is reviewed by considering the pleadings, admissions, and other evidence submitted by the parties in a light most favorable to the nonmoving party. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008), reh den 481 Mich 882 (2008). Summary disposition is proper if there is "no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. A genuine issue of material fact exists when "reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). We consider the evidence that was properly presented to the trial court in deciding the motion. *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 310; 660 NW2d 351 (2003).

## III. ANALYSIS

Plaintiff argues that the trial court erred because the condition on defendant's premises was not open and obvious, and even if it was, special aspects existed that made the open and obvious doctrine inapplicable, particularly the fact that plaintiff's job required that she confront the hazard and defendant did nothing to correct the defective condition. We disagree.

The threshold issue in a premises liability action is whether the defendant owed the plaintiff a duty. *Fultz*, 470 Mich at 463. "Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Moning v Alfono*, 400 Mich 425, 438-439; 254 NW2d 759 (1977). "In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Benton v Dart Props, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006) (citation omitted). "The duty owed to a visitor by a landowner depends on whether the visitor was classified as a trespasser, licensee, or invitee at the time of the injury." *Sanders v Perfecting Church*, 303 Mich App 1, 4; 840 NW2d 401 (2013).

-2-

In this case, the parties and the trial court agreed that plaintiff had invitee status. In *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596-597; 614 NW2d 88 (2000), our Supreme Court explained the requisite standard of care owed by a landowner to an invitee as follows:

> An 'invitee' is a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make it safe for the invitee's reception. The landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards. Thus, an invitee is entitled to the highest level of protection under premises liability law. [Quotation marks and citations omitted.]

Michigan law, however, does not charge landowners "with guaranteeing the safety of every person who comes onto their land." *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012) (citation omitted). Both landowners and visitors must "exercise common sense and prudent judgment when confronting hazards on the land." *Id*. Michigan law does not require perfection from landowners and requires that visitors take personal responsibility to take reasonable care for their own safety. *Id*. at 460.

Further, a landowner has no duty to warn or protect a visitor from open and obvious dangers "because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Id*. at 460-461 (citations omitted). Whether a particular hazard is open and obvious involves an objective standard; a hazard is open and obvious if "an average person with ordinary intelligence would have discovered it upon casual inspection." *Id*. at 461 (citations omitted). However, a landowner will remain liable if "special aspects of a condition make even an open and obvious risk unreasonable." *Id*. When an open and obvious danger has special aspects that make it unreasonably dangerous notwithstanding its open and obvious character, the landowner must still take reasonable steps to protect the invitee. *Id*.

In *Hoffner*, our Supreme Court specified two instances where an otherwise open and obvious hazard may have special aspects that could give rise to liability:

> when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable*. *In either circumstance*, such dangers are those that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided and thus must be differentiated from those risks posed by ordinary conditions or typical open and obvious hazards. Further, we have recognized that neither a common condition nor an avoidable condition is uniquely dangerous. Thus, when a plaintiff demonstrates that a special aspect exists or that there is a genuine issue of material fact regarding whether a special aspect exists, tort recovery may be permitted if the defendant breaches his duty of reasonable care. [*Id*. at 463 (quotation marks and citations omitted, emphasis in the original).]

Our Supreme Court reiterated the principle previously articulated in *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516-517; 629 NW2d 384 (2001), that the open and obvious doctrine cuts off liability if the condition creates a risk of harm only because the invitee fails to discover the condition or realize its danger, and only if the risk of harm remains unreasonable despite its obviousness must a landowner take reasonable precautions. *Hoffner*, 492 Mich at 463. Our Supreme Court explained that, for a hazard to be "effectively unavoidable" and excepted from the application of the open and obvious doctrine, the plaintiff must have no choice but to encounter the hazard. *Id*. at 468. Our Supreme Court clarified:

> Accordingly, the standard for "effective unavoidability" is that a person, for all practical purposes, must be required or compelled to confront a dangerous hazard. As a parallel conclusion, situations in which a person has a choice whether to confront a hazard cannot truly be unavoidable, or even effectively so. [*Id*. at 468-469.]

> * * *

> Relevant here, it cannot be said that compulsion to confront a hazard by the *requirement of employment* is any less "avoidable" than the need to confront a hazard in order to enjoy the privileges provided by a contractual relationship, such as membership in a fitness club.

> * * *

> [W]hen confronted with an issue concerning an open and obvious hazard, Michigan courts should hew closely to the principles previously discussed. It bears repeating that exceptions to the open and obvious doctrine are narrow and designed to permit liability for such dangers only in *limited*, extreme situations. Thus, an "unreasonably dangerous" hazard must be just that—not just a dangerous hazard, but one that is *unreasonably* so. And it must be *more than* theoretically or retrospectively dangerous, because even the most unassuming situation can often be dangerous under the wrong set of circumstances. An "effectively unavoidable" hazard must truly be, for all practical purposes, one that a person is required to confront under the circumstances. A general interest in using, or even a contractual right to use, a business's services simply does not equate with a compulsion to confront a hazard and does not rise to the level of a "special aspect" characterized by its *unreasonable risk of harm*. [*Id*. at 472-473 (citations omitted, emphasis in the original).]

In this case, plaintiff argues that the danger posed by the puddle was not open and obvious because the slipperiness she encountered was not noticeable to her until she slipped and fell and that special aspects of the puddle posed a particularly severe risk of harm. We disagree.

The record reflects that plaintiff observed a puddle on other occasions when she delivered mail to the premises. She also saw a puddle on the day of her accident, noticed the stained area, and knew that the puddle originated from a gutter downspout. Plaintiff described the dimensions of the puddle, and the photos she presented to the trial court were consistent with her physical

description of the puddle. Plaintiff's testimony, defendant's testimony, and the photos presented to the trial court, all establish that an average person of ordinary intelligence would recognize the presence of the plainly visible puddle and that the staining on the concrete could indicate slipperiness on the underlying concrete. Our Supreme Court has directed that courts must not focus "on the subjective degree of care used by the plaintiff." *Lugo*, 464 Mich at 523-524. Rather, the test requires application of an objective standard based on an average person of ordinary intelligence. *Hoffner*, 492 Mich at 461. Therefore, the fact that plaintiff may have believed that the puddle was safe and chose to encounter the risk by walking through it is not dispositive. The evidence in this case, when viewed in a light most favorable to plaintiff, establishes that reasonable minds could not differ on the issue that the puddle was open and obvious upon casual inspection by an average person of ordinary intelligence. The trial court, therefore, did not err by concluding that the puddle was open and obvious.

Plaintiff argues that special aspects justify imposing liability on defendant because the condition of the puddle posed a severe risk of danger made effectively unavoidable by her job which she asserts compelled her to encounter the hazard. We disagree.

The fact that a person's employment might involve facing an open and obvious hazard generally does not make that hazard "effectively unavoidable." See *Bullard v Oakwood Annapolis Hosp*, 308 Mich App 403, 412; 864 NW2d 591 (2014). As explained in *Hoffner*, for "effective unavoidability," a person, "for all practical purposes, must be required or compelled to confront a dangerous hazard." *Hoffner*, 492 Mich at 468-469. The evidence in this case does not support plaintiff's contention.

The record reflects that the puddle lacked any special aspects that could conceivably render the open and obvious doctrine inapplicable. The photos about which defendant testified and were presented to the trial court by plaintiff established that the puddle constituted an area of water on the concrete driveway approximately two to three feet wide. Plaintiff's testimony described the condition consistent with the photos. Close examination of the photos reveals that one could access the mailbox without actually having to step into the puddle. A clear path up the driveway to the mailbox existed and alternatively one could walk around on the opposite side of the puddle to access the mailbox. Similarly, once plaintiff delivered the mail she could have avoided the puddle. The puddle presented a common, avoidable condition that did not constitute a uniquely dangerous hazard. The puddle could have been avoided and did not pose an unreasonable risk of harm because it was not "effectively unavoidable." Based on the evidence, the trial court correctly concluded that the puddle did not constitute an "effectively unavoidable" condition on defendant's premises. Evidence established that plaintiff had several optional paths to and from the mailbox. De novo review of the record evidence in a light most favorable to plaintiff does not support plaintiff's claim that an "unreasonably dangerous" hazard existed that she could not avoid.

Plaintiff argues that *Lymon v Freedland*, 314 Mich App 746; 887 NW2d 456 (2016), supports her contention that her job compelled her to encounter the puddle and walk through it to deliver the mail. We disagree. In *Lymon*, this Court ruled that the plaintiff, a home healthcare aide who provided care for an elderly patient who could not care for herself and required constant care and could not be left alone, established that a question of fact existed whether the condition was "effectively unavoidable." *Id*. at 749-750, 761-762. The plaintiff established that

a question remained whether she could not abandon her patient and was compelled to traverse the hazardous condition, a snow covered sidewalk, to get to the patient. The *Lymon* Court reasoned:

> [P]laintiff in this case was compelled to enter the premises because she was a home healthcare aide who could not abandon her patient. As an essential home healthcare aide, plaintiff did not have the option of failing to appear for work. Gloria was an elderly patient with dementia and Parkinson's disease, and plaintiff was scheduled to care for her throughout the night. Hence, abandoning Gloria was not an option, leaving plaintiff compelled to traverse two equally hazardous pathways. On the one hand, plaintiff could traverse the steep, snowy, and icy driveway. On the other hand, plaintiff could have traversed the steep yard next to the driveway, but this route also contained slippery, hazardous conditions. Evidence showed that some individuals were able to successfully navigate this route to the home, supporting the argument that the hazards on the driveway may have been avoidable. However, other evidence left open a question of fact as to whether the yard provided a viable alternative route. [*Id*. at 761-762.]

This case is significantly distinguishable from *Lymon* because plaintiff did not have to encounter the risk to get her job done. The record reflects that plaintiff could have avoided the puddle altogether to get to the mailbox to deliver the mail and to exit the premises. Plaintiff had alternative routes available to access the mailbox and exit the area of the mailbox without walking through the puddle. Plaintiff did not testify that the only available route to the mailbox required traversing through the puddle nor could she. The evidence presented to the trial court established that, despite alternative safe routes, plaintiff simply chose to encounter the hazard.

Plaintiff failed to establish the existence of special aspects that warranted finding an exception to the open and obvious doctrine. The puddle was neither an unreasonably dangerous condition nor "effectively unavoidable." The record reflects that the trial court properly evaluated whether a reasonable invitee in plaintiff's position would have been compelled by extenuating circumstances to encounter the open and obvious puddle in the driveway and traverse the hazardous condition. The trial court correctly concluded, based upon the evidence presented to it, that no exception to the open and obvious doctrine required the imposition of liability on defendant. Accordingly, the trial court properly granted defendant summary disposition.

Plaintiff's final argument that defendant's notice or knowledge of the puddle's existence gave rise to duties to warn invitees or to make the premises safe lacks merit. The open and obvious doctrine cuts off liability because a premises owner has no duty to warn or protect a visitor from open and obvious dangers "because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Hoffner*, 492 Mich at 460-461 (citations omitted). Because the open and obvious doctrine applied in this case and no special aspects created exceptions to the applicability of the doctrine, defendant did

not have a duty to warn or protect plaintiff from the open and obvious puddle hazard. Therefore, the trial court properly granted defendant summary disposition.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ James Robert Redford